# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JOAO BOCK TRANSACTION SYSTEMS, LLC   )
   )
              Plaintiff,   )
   )   Case No. 1:12-cv-01138-SLR
v.   )
   )
JACK HENRY & ASSOCIATES, INC.,   )   **JURY TRIAL DEMANDED**
   )
              Defendant.   )

## DEFENDANT JACK HENRY & ASSOCIATES, INC.'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF
## INVALIDITY BASED ON COLLATERAL ESTOPPEL

Dated: January 24, 2014

POLSINELLI PC

Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware  19801
Telephone:   (302) 252-0920
Facsimile:  (302) 252-0921
skatona@polsinelli.com

OF COUNSEL:
Russell S. Jones, Jr.
Joshua M. McCaig
Richard P. Stitt
Polsinelli PC
900 W 48th Place, Suite 900
Kansas City, MO 64112-1895
Telephone:  (816) 753-1000
Facsimile:   (816) 753-1536
rjones@polsinelli.com
jmccaig@polsinelli.com
rstitt@polsinelli.com

*Attorneys for Jack Henry & Associates, Inc.*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   NATURE AND STAGE OF PROCEEDINGS ............................................... 1

III.  SUMMARY OF ARGUMENT ...................................................................... 1

IV.   STATEMENT OF FACTS ............................................................................. 2

V.    LEGAL STANDARD ..................................................................................... 3

      A.    Summary Judgment ............................................................................ 3

      B.    Collateral Estoppel – Issue Preclusion – Invalid Patent Claims ............................ 4

      C.    Modifying the Prior Art to Operate Via the Internet is Obvious. ........................... 6

VI.   ARGUMENT ................................................................................................. 7

      A.    The '003 Patent Claims Are Substantially Identical in Scope to the Invalid
            '725 Claims and JBTS is Collaterally Estopped from Re-litigating the Validity
            Of Substantially Identical Claims. .......................................................... 8

      B.    Claim 30 of the '003 Patent Is Identical In Scope to Invalid Claim 108 of the
            '725 Patent and Therefore Claim 30 is Invalid ......................................... 9

      C.    Claim 102 of the '003 Patent Is Identical In Scope to Invalid Claim 108 of the
            '725 Patent and Therefore Claim 102 Also Is Invalid ................................. 11

      D.    Claim 317 of the '003 Patent is Identical in Scope to Invalid Claim 267 of the
            '725 Patent and Therefore Claim 317 Also is Invalid. ................................ 12

      E.    Claim 370 of the '003 Patent is Identical in Scope to Invalid Claim 267 of the
            '725 Patent and Therefore Claim 370 Also is Invalid. ................................ 13

      F.    Claim 414 of the '003 Patent is Identical in Scope to Invalid Claim 267 of the
            '725 Patent and Therefore Claim 414 Also is Invalid. ................................ 14

      G.    Joao's Prior Art Submissions to the Patent Office Do Not Obviate Collateral
            Estoppel ......................................................................................... 16

VII.  THE ASSERTED DEPENDENT CLAIMS FROM THE '003 PATENT ARE
      SIMILARLY INVALID BASED ON THE INVALIDITY OF THE '725 CLAIMS...... 18

      A.    Dependent '003 Claims 31, 34, 35 and 41 Add Nothing Patentable to Claim 30
            and are Invalid in View Of '725 Patent Claim 109. ................................... 18

B.    Dependent '003 Claims 106, 108, 122 and 125 Do Not Add A Patentable Distinction To Invalid '725 Claim 109. .................................................................. 18

C.    The Dependent Claims in the "003 Patent Related to Independent Claim 317 Do Not Provide a Patentable Distinction From '725 Claim 267. ............................... 19

D.    Dependent Claims 371, 372 and 374 Do No Provide A Patentable Difference From Claim 370. .................................................................................................. 20

E.    '003 Patent Claims 416, 417, 418, 419, 420 and 423 Are Invalid As Adding No Patentable Distinction To Claim 415. .................................................................. 20

VIII.   CONCLUSION .......................................................................................................... 20

46512697.5

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Aspex Eye Wear, Inc. v. Marchon Eye Wear, Inc.,*
   672 F.3d 1335 (Fed. Cir. 2012)...................................................................................4

*Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.,*
   642 F.3d 1031 (Fed. Cir. 2011)...................................................................................4

*Blonder-Tongue Labs., Inc. v. University of Illinois Fdn.,*
   402 U.S. 313 (1971)................................................................................................4, 5

*Bourns, Inc. v. United States,*
   537 F.2d 486 (Ct. Cl. 1976) .....................................................................................5, 6

*Brown v. 3M,*
   265 F.3d 1349 (Fed. Cir. 2001)...................................................................................4

*Burlington N. R.R. Co. v. Hyundai Merch. Marine,*
   63 F.3d 1227, 1231-31 (3d Cir. 1995) .......................................................................4

*CollegeNET, Inc. v. ApplyYourself, Inc.,*
   2008 WL 4793683 (D. Or. Oct. 28, 2008)...............................................................6, 9

*In re Katz Interactive Call Processing Patent Litig.,*
   639 F.3d 1303 (Fed. Cir. 2011)...................................................................................5

*Joao Bock Transaction Sys., LLC v. Sleepy Hollow Bank and Jack Henry & Associates, Inc.,*
   445 Fed. App'x 359 (Fed. Cir. 2011). (Stitt Dec'l., Ex. 3).......................................3

*KSR International Co. v. Teleflex Inc.,*
   550 U.S. 398, 127 S. Ct. 1727 (2007).......................................................................16

*Medinol Ltd. v. Guidant Corp.,*
   341 F. Supp. 2d 301 (S.D.N.Y. 2004)..........................................................5, 6, 8, 9

*Mendenhall v. Cedarapids, Inc.,*
   5 F.3d 1557 (Fed. Cir. 1993)....................................................................................17

*Mississippi Chem. Corp. v. Swift Agr. Chem. Corp.,*
   717 F.2d 1374 (Fed. Cir. 1983)................................................................................17

*Muniauction, Inc. v. Thomson Corp.,*
   532 F.3d 1318 (Fed.Cir. 2008).............................................................6, 7, 10, 11

*Mycogen Plant Science, Inc. v. Monsanto Co.*,
　　252 F.3d 1306 (Fed. Cir. 2001), *overruled on other grounds,* 535 U.S. 1109 (2002)...........5, 8

*Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*,
　　288 F.3d 519 (3d Cir. 2002)...............................................................................................4, 7

*Ohio Willow Wood v. Alps South, LLC*,
　　735 F.3d 1333 (Fed.Cir. 2013)........................................................................................4, 6, 9

*PharamStem Therapeutics, Inc. v. ViaCell, Inc.*,
　　491 F.3d 1342 (Fed. Cir. 2007)............................................................................................17

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*,
　　946 F.2d 870 (Fed. Cir. 1991).............................................................................................17

*Sciele Pharma Inc. v. Lupin Ltd.*,
　　684 F.3d 1253 (Fed. Cir. 2012)............................................................................................17

*South Corp. v. United States*,
　　690 F.2d 1368 (Fed. Cir. 1982) (en banc)..............................................................................5

*Soverain Software LLC v. Newegg Inc.*,
　　705 F.3d 1333 (Fed. Cir. 2013), *cert. denied*, 2014 WL 102440 (2014)................6, 10, 11, 13

*Westwood Chem., Inc. v. United States*,
　　525 F.2d 1367 (Ct. Cl. 1975) ...............................................................................5, 6, 7, 8, 9

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) .......................................................................................................3

46512697.5

## I.   INTRODUCTION

The patent claims asserted in this suit are identical in scope to the claims of the Joao 6,529,725 patent ("the '725 Patent"), which a district court invalidated following a jury verdict in 2010.  Because the scope of the claims is identical, collateral estoppel prevents plaintiff from re-litigating the issue of validity here.  The Court should enter summary judgment based on invalidity of the asserted claims.

## II.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff brought this action in September 2012, alleging that Jack Henry infringed U.S. Patent No. 7,096,003 ('003 Patent). (D.I. 1).  Jack Henry answered and counterclaimed. (D.I. 6). The Court denied Plaintiff's motion to dismiss and strike portions of Jack Henry's affirmative defenses and counterclaims (D.I. 30, 31), and gave Jack Henry leave to file an amended answer and counterclaims that included additional allegations of misconduct and unenforceability. (D.I. 32). The parties have exchanged infringement and invalidity contentions and discovery is ongoing. *Id.*  A jury trial is set for January 2015. *Id.*

There are presently five (5) independent claims-in-suit: claims 30, 102, 317, 370 and 414. (Stitt Dec'l., Ex. 14 and D.I. 1]). There are also thirty (30) dependent claims asserted: claims 31, 32, 34, 35, 41, 106, 108, 122, 125, 318, 319, 320, 324, 327, 330, 331, 337, 340, 343, 371, 372, 374, 415, 416, 417, 418, 419, 420, 422, 423 and 429. (Stitt Dec'l., Ex. 14 and D.I. 1).[1]

## III.   SUMMARY OF ARGUMENT

JBTS is collaterally estopped from re-litigating issues of claim invalidity that were conclusively determined by the '725 judgment. (Stitt Dec'l., Ex. 1 and 2).  The jury found that all

---

[1] Jack Henry has repeatedly asked JBTS to reduce the number of asserted claims, from the unmanageable thirty-five (35) currently in the case to a manageable number of about ten.  So far, JBTS has not done so.

the asserted claims in the '725 patent were invalid as anticipated and obvious.  The district court entered judgment accordingly and the Federal Circuit affirmed.  (Stitt Dec'l., Ex. 1 and 3).   The invalidity of the '725 claims is thus a final judgment, and JBTS is precluded from challenging that judgment and the jury findings on which that judgment was based.  (Stitt Dec'l., Ex. 3).

Independent claims 30, 102, 317, 370 and 414 of the '033 patent are all essentially identical to independent claims 108 and 267 of the '725 Patent, which are two of the claims that were invalidated in the previous action.  There are no material differences, and the '003 claims have the same scope as the invalid '725 claims.  The dependent claims in the '003 patent are no different from those invalidated in the '725 Patent, and collateral estoppel renders the '003 dependent claims invalid as well.

Exhibits 11 through 18 provide a limitation- by-limitation comparison of claims 30, 102, 317, 370 and 414 of the '003 Patent with the limitations in claims 108 and 267 of the '725 Patent. (Stitt Dec'l., Exs. 11-18). These comparisons show each '003 Patent claim is no more than a restatement of one of the invalid '725 Patent claims.  Because there are no meaningful differences between the '725 claims and the claims asserted here, collateral estoppel renders the '003 Patent claims invalid.

## IV.     STATEMENT OF FACTS

In 2003, JBTS accused a Jack Henry customer—Sleepy Hollow Bank of Sleepy Hollow, New York--of infringing the '725 Patent. (Stitt Dec'l., Ex  2). Jack Henry defended the *Sleepy Hollow* case on behalf of its customer, and JBTS added Jack Henry as a defendant.  JBTS accused Jack Henry of infringing claims 108, 109, 267, 280, 293, and 294 of the '725 Patent.[2] (Stitt Dec'l., Ex. 1 and 2 and 16).

---

[2] Claims 108 and 267 were independent claims; the others depended on either claim 108 or claim 267.

While the parties were litigating the '725 Patent, Joao was prosecuting a continuation patent based on the '725.   In August 2006, the '003 Patent issued.  (Stitt Dec'l., Ex. 14).  The '003 is a continuation of the '725 patent, so the '003 specification is identical to the '725 specification. (Stitt Dec'l., Ex. 14 and 16).   No new subject matter is found in the '003 Patent that was not present in the '725 Patent.

The *Sleepy Hollow* case was tried in March 2010 in the Southern District of New York. The jury returned a verdict in Jack Henry's favor, finding that all of the '725 claims asserted against Jack Henry were invalid as both anticipated and obvious in view of the prior art.  (Stitt Dec'l., Ex. 1).[3] The anticipating and invalidating prior art was determined to be Jack Henry's Cash Management product and the Blonder, Deming and Fulton patents. (Stitt Dec'l., Ex. 2).[4]

The district court entered judgment in accordance with the jury's verdict. (Stitt Dec'l., Ex. 2 and 3).  In December 2011, the Federal Circuit affirmed.  *Joao Bock Transaction Sys., LLC v. Sleepy Hollow Bank and Jack Henry & Associates, Inc.*, 445 Fed. App'x 359 (Fed. Cir. 2011). (Stitt Dec'l., Ex. 3).

## V.   LEGAL STANDARD

### A.   Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

---

[3] The asserted claims in *Sleepy Hollow* were claims 108, 109, 267, 280, 293 and 294. The jury also found that none of the claims were infringed.  (Stitt Dec'l., Ex. 1, p.2).

[4] Cash Management was a Jack Henry product, first sold in 1993, that allowed a bank's customers to communicate with the bank's computer using a modem-to-modem phone connection.  Blonder is U.S. Pat. No. 5,708,422; Deming is U.S. Pat. No. 4,823,264; and Fulton is U.S. Patent No. 5,708,422.  These patents generally covered systems for remotely accessing and communicating information between financial institutions or other service providers, on the one hand, and those providers' customers or users on the other.

46512697.5

Civ. P. 56(a).  Invalidity can be determined at the summary judgment stage. *E.g., Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001); *Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.,* 642 F.3d 1031, 1038–39 (Fed. Cir. 2011).

> **B.      Collateral Estoppel – Issue Preclusion – Invalid Patent Claims**

> **1.      Collateral Estoppel Generally.**

Collateral estoppel protects a party from having to re-litigate issues that were fully and fairly tried in a previous action and adversely resolved against the party's opponent. *Ohio Willow Wood v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).  Collateral estoppel can be used where a patent claim has been invalidated in earlier litigation. *E.g., Blonder-Tongue Labs., Inc. v. University of Illinois Fdn.,* 402 U.S. 313 (1971).

Regional circuit precedent generally governs the application of collateral estoppel. In the Third Circuit, judgment based on collateral estoppel is appropriate where: "(1) the issue sought to be precluded [is] the same as that involved in the prior action, (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002) (brackets in original) (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine*, 63 F.3d 1227, 1231-32 (3d Cir. 1995)).

Where a collateral estoppel determination involves patent claim invalidity, Federal Circuit precedent is applied to issue (1) -- whether the litigated issue (*i.e.,* claim validity in the first case) and the new issue (claim validity in the second case) are sufficiently the same for collateral estoppel to apply. *Ohio Willow Wood*, 753 F.3d at 1342; *Aspex Eye Wear, Inc. v. Marchon Eye Wear, Inc.,* 672 F.3d 1335, 1341 n.1 (Fed. Cir. 2012) ("[T]he question whether a particular claim in a patent case is the same or separate from another claim has special application to patent cases, and we therefore apply our own law to that issue".

4

### 2.   Patent Claim Collateral Estoppel as Issue Preclusion.

Under collateral estoppel, once a claim in a patent has been adjudged invalid, it is invalid in any later action based on the same patent. *Blonder Tongue Labs,* 402 U.S. at 349-50. And "[c]ollateral estoppel also applies to common issues in actions involving different but related patents." *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1310 (Fed. Cir. 2001), *overruled on other grounds,* 535 U.S. 1109 (2002). Collateral estoppel applies where "the issues litigated, not the specific claims around which the issues were framed," are the same. *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1375 (Ct. Cl. 1975).[5]

"[P]atents are routinely 'repeated and duplicated, varying one from the other only in certain minor details,' [so] it is unsurprising that each of these 'differently worded claims may present identical issues.'" *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 314 (S.D.N.Y. 2004) (quoting *Bourns, Inc. v. United States*, 537 F.2d 486, 492 (Ct. Cl. 1976)). "While different claims are presumed to be of different scope, that does not mean that they necessarily present different questions of validity or infringement." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011). Thus,

> [I]f a patentee has once been heard on all the factual issues necessary to an [invalidity] determination, and that determination already has been made adversely to one claim, neither due process nor any provision of the patent statute would appear to require that the patentee be heard once again on those same issues and on the same [invalidity] determination simply because a different claim is involved.

*Bourns*, 537 F.2d at 492.

When the scope of the new claims is identical to the scope of the previously litigated claims, *or if there are only minor differences*, then there is no new issue and collateral estoppel

---

[5]   Decisions of the Court of Claims, which was the predecessor to the Federal Circuit, are precedential authority. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

5

bars re-litigating the question of validity. *Westwood Chem.*, 525 F.2d at 1375; *see also CollegeNET, Inc. v. ApplyYourself, Inc.*, 2008 WL 4793683, at *5 (D. Or. Oct. 28, 2008) ("[I]f the claims are not identical but the difference is minor and not substantive, collateral estoppel will apply"); *Ohio Willow Wood,* 735 F.3d at 1342 (collateral estoppel is not limited to claims that are identical, but rather to issues that are substantially identical); *Medinol*, 341 F.2d at 332 ("[T]he question is … whether [a difference] lends patentable significance to the claimed combination").

The mere existence of different language between the adjudicated claims and the un-adjudicated claims is not sufficient to overcome collateral estoppel. *Ohio Willow Wood*, 753 F.3d at 1342, 1343. If the differences between the un-adjudicated and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies. *Bourns*, 537 F.2d at 493. Even if there are some differences between the claims, collateral estoppel still applies so long as the differences "do not vary the relevant issues bearing on obviousness." *Id.* And, even then, the claimed invention must be considered "as a whole," *id.* at 494, and unless new claim elements "distinguish the claimed combination as a whole from the prior art," the patentee will be estopped. *Id.* at 493. The patent holder has the burden in opposing summary judgment to explain how the different limitation changes the invalidity analysis. (*Id.*).

### C.     Modifying the Prior Art to Operate Via the Internet is Obvious.

The main difference between the '725 claims and the '003 claims is that the former claimed transmitting signals electronically suing various means, and the latter claim transmitting signals over the Internet. That is well-recognized as a distinction without a difference. *E.g., Soverain Software LLC v. Newegg Inc*., 705 F.3d 1333, 1340 (Fed. Cir. 2013), *cert. denied*, 2014 WL 102440 (2014). In *Soverain,* the Federal Circuit overturned a JMOL as to non-obviousness of three patents. The Court cited *Muniauction, Inc. v. Thomson Corp*., 532 F.3d 1318, 1327

6

(Fed. Cir. 2008) as holding that using the Internet to operate prior art applications was no more

than an obvious modification of the prior art. *Soverain, id.* at 1340 (obvious to adapt the [prior

art] to known browser capabilities when these capabilities became commonplace); *see also*,

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d at 1327 ("conducting previously known methods

through an Internet web browser was obvious as it amounted to no more that applying the use of

the Internet to existing electronic processes at a time when doing so was commonplace").

## VI.    ARGUMENT

Collateral estoppel applies to the claims-in-suit.  The Third Circuit's four requirements

for application of collateral estoppel are met: (1) the issue sought to be precluded is the same as

that involved in the prior action, (2) that issue was actually litigated; (3) it was determined by a

final and valid judgment; and (4) the determination was essential to the prior judgment. *Nat'l*

*R.R. Passenger Corp., supra,* 288 F.3d at 525.

The last three of these requirements cannot be reasonably contested.  First, the *Sleepy*

*Hollow*  parties actually litigated and the jury determined the invalidity of claims 108, 109, 267,

280, 293 and 294 of the '725 Patent .  Second, the district court entered judgment and the Federal

Circuit affirmed the judgment.  Third, because validity was a key issue in the *Sleepy Hollow*

action, the determination of invalidity was essential to the judgment.

Therefore, the only issue for this Court to evaluate is the first of the *National R.R.*

*Passenger Corp.'s* issues – whether the issue sought to be precluded here (the invalidity of the

asserted claims in the '003 patent) is the same as that decided in the prior action (the invalidity of

the asserted claims in the '725 patent). The answer is "yes," because a comparison of the

limitations of the '003 claims-in-suit and the limitations of the invalid '725 claims shows that the

scope of the two sets of claims is essentially the same. *Westwood*, 525 F.2d at 1375 (if [the

claims] are of identical scope, it readily follows that no new issues bearing on [validity] are presented.)

Comparing the two sets of claims shows that independent claims 30, 102, 317, 370 and 414 of the '003 Patent merely restate and/or reorganize the claim limitation in claims 108 and 267 of the '725 patent, and that the same is true for the dependent claims.  They do not present any new points of novelty that would separately confer patentability.

**A.      The '003 Patent Claims Are Substantially Identical in Scope to the Invalid '725 Claims and JBTS is Collaterally Estopped from Re-litigating the Validity Of Substantially Identical Claims.**

Because the '003 Patent is a continuation of the '725 Patent, it follows that the specifications of the two patents are identical. The only question is whether the '003 claims-in-suit differ in some material way from the previously invalidated '725 Patent claims. Minor differences do not matter: in order to avoid collateral estoppel, the differences must be such that they would confer patentability on the '003 claims. *Medinol*, 341 F. Supp. 2d at 322 ("[T]he question is . . . whether [a difference] lends patentable significance to the claimed combination").

In the *Sleepy Hollow* case, the jury found claims 108, 109, 267, 280, 293, and 294 of the '725 Patent to be invalid based on both anticipation and obviousness.  (*See* Stitt Dec'l., Ex. 3). To reach this conclusion, the jury *per force* determined that every claim limitation of the '725 asserted claims was found in the prior art.  That each particular claim element in the '725 claims existed in the prior art is an issue that JBTS is precluded from re-litigating.  *Mycogen Plant Science, Inc.*, 252 F.3d at 1310 ("Collateral estoppel also applies to common issues in actions involving different but related patents"); *Westwood Chem.*, 525 F.2d at 1375 (observing the focus is on "the issues litigated, not the specific claims around which the issues were framed").

The question is whether the issues presented by the '003 Patent are substantially identical to those resolved with respect to the '725 Patent.  *See Westwood Chem.*, 525 F.2d at 1375.  The

8

first step is to compare the adjudicated claims to the unadjudicated claims. *See CollegeNET*, 2008 WL 4793682 at *4; *Medinol*, 341 F. Supp. 2d at 315. "If [the claims] are of identical scope, it readily follows that no new issues bearing on [validity] are presented." *Westwood*, 525 F.2d at 1375.

Clearly there are no new issues with respect to the pertinent art, the scope of the art, or the level of ordinary skill. The pertinent prior art – Cash Management and the Blonder, Deming, and Fulton patents – are exactly the same today as in the '725 litigation.[6] Likewise, the level of ordinary skill, which was a point of contention in the '725 litigation, has not changed. (*See* Stitt Dec'l., Ex. 1). There is no new subject matter in the '003 Patent that would demand a different level of ordinary skill to evaluate the unadjudicated claims.

### B.    Claim 30 of the '003 Patent Is Identical In Scope to Invalid Claim 108 of the '725 Patent and Therefore Claim 30 is Invalid

Claim 30 of the '003 Patent has the same scope as invalid claim 108 of the '725 patent. While there are slight language differences between claim 30 and claim 108, the use of different language between the claims-in-suit and the invalid claims is not sufficient to overcome collateral estoppel. *Ohio Willow Wood, supra* at 1343.

Exhibit 4 presents a limitation-by-limitation comparison between '725 claim 108 and '003 claim 30. It shows that each claim limitation of claim 30 matches a limitation in invalid claim 108. Claim 30 and '725 claim 108 have identical apparatus structure and function. In both claims, a memory device (*See,* Limitation ID. 30b vs. 108b) stores a "limitation or restriction" that prohibits use of a bank account (See, Limitation ID. 30c vs. 108c). The limitation or restriction is transmitted from a communication device to a receiver. (See, Limitation ID. 30d vs. 108d). The limitation or restriction is automatically received and stored in memory. (See,

---

[6] .

Limitation ID. 30f and g vs. 108e and 108f). A processing device processes information regarding a banking transaction and uses the limitation/restriction in that processing. (See, Limitation ID. 30h and 30i vs. 108g and 108h).  Finally, the processing device generates a signal related to the allowing or disallowing of the transaction. (See, Limitation ID. 30j vs. 108i).

Admittedly, claim 30 has a limitation that is not present in claim 108: claim limitation 30e specifies that the transmission is to be via the Internet or World Wide Web.  But this is not a patentable distinction. The use of the Internet to perform prior art activities is not novel and is obvious. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327 (Fed. Cir. 2008) ("conducting previously known methods through an Internet web browser was obvious as it amounted to no more that applying the use of the Internet to existing electronic processes at a time when doing so was commonplace"); *Soverain, supra*.

Comparing the structural components of the '003 claim 30 apparatus and the '725 claim 108 apparatus confirms this identical correspondence of claim scope.  This comparison is shown in Exhibit 5.  Exhibit 5 shows that every structure of the '003 Patent claim 30 was present in invalid claim 108 of the '725 Patent: an Account Holder Communication Device (1) sends a Limitation/Restriction (2) to a Receiver (3). That Limitation/Restriction (2) is sent from the Receiver (3) to a Memory Device (4). The Limitation/Restriction is then provided to a "processing device" (5). (Note that in claim 30 the term "processing device" is used where claim 108 uses the term "central processing device".) The processing of the Limitation/Restriction results in a signal (6) being generated by the processing device.

The scope of claim 30 of the '003 Patent is the same as the scope of claim 108 of the '725 Patent.  Because '725 claim 108 has been finally adjudicated to be invalid, the same is true for '003 claim 30.

**C.     Claim 102 of the '003 Patent Is Identical In Scope to Invalid Claim 108 of the '725 Patent and Therefore Claim 102 Also Is Invalid**

Claim 102 in the '003 patent has the same scope as invalid claim 108 of the '725 Patent. Again, some reordering of words is used in '003 claim 102 and some banking actions are re-named, but these wording changes do not alter the claim scope as between '003 claim 102 and invalid '725 claim 108.

Exhibit 6 shows the limitation-by-limitation text comparison between '003 claim 102 and '725 claim 108.  In both claims, a memory device (Limitation ID. 102b vs. 108b) stores a Limitation/Restriction on the use of a bank account (Limitation ID. 102c vs. 108c).  The limitation/restriction is transmitted from a communication device to a receiver. (Limitation ID. 102d vs. 108d).  The limitation/restriction is automatically received and stored in memory. (Limitation ID. 102f and g vs. 108e and 108f).  Then a "processing device" processes information regarding a banking transaction and uses the limitation/restriction in that processing. (Limitation ID. 30h and 30i vs. 108g and 108h). While in '003 claim 102 an "authorization request" is processed—while in '725 claim 108 "information regarding a banking transaction" is processed--both of these terms represent an activity on a bank account and are not patentably distinct.  Finally, in both claims the processing device generates a signal containing information for authorizing or disallowing the transaction. (Limitation ID. 30j vs. 108i).

Again, claim 102 relies on the Internet or World Wide Web as the transmission pipeline for sending information from the communication device to the receiver.  As discussed above, this is an obvious modification that cannot elevate the prior art to patentable status.  *Soverain Software LLC v. Newegg Inc.*, 705 F.3d at 1340; *Muniauction, Inc. v. Thomson Corp.*, *supra,* 532 F.3d at 1327.

The structure and function claimed in '003 claim 102 is no different from that claimed in '725 claim 108.  Exhibit 7 provides a comparison of these structures and shows that identical structures and function are present as between claim 102 and invalid claim 108: an Account Holder Communication Device (1) sends a Limitation/Restriction (2) to a Receiver (3).  The Limitation/Restriction (2) is sent from the Receiver (3) to a Memory Device (4).  The Limitation/Restriction is then provided to a "processing device" (5) ("central processing device" in claim 108).  The processing of the Limitation/Restriction results in a signal (6) being generated by the processing device.

Exhibit 7 shows that every structure of claim 102 of the '003 Patent was present in invalid claim 108 of the '725 Patent.  The only distinction being that '003 claim 102 specifies use of the Internet for the communication from the Account Holder Communication Device to the receiver.  Again, under *Soverain* and *Muniauction*, this is an obvious modification and not a patentable distinction.

**D.      Claim 317 of the '003 Patent is Identical in Scope to Invalid Claim 267 of the '725 Patent and Therefore Claim 317 Also is Invalid.**

Claim 317 of the '003 Patent is a rearranged version of invalid '725 claim 267.  The main difference is the obvious modification of using the Internet for transmitting signals.  Claim 317 includes the limitation of "independently of any processing of the transaction by a central transaction processing computer," a limitation is not present in invalid '725 claim 267.  But '725 claim 267 is not limited to "acting with" or "acting independently of" processing of the transaction by a central transaction processing computer.  In other words, '725 claim 267 would cover either form of activity and this added feature of '003 claim 317 is not a patentable distinction.

The limitation-by-limitation comparison in Exhibit 8 shows the correspondence between invalid '725 claim 267 and '003 claim 317.   In both claims, an "Input Device" provides information regarding a transaction (Limitation ID. 317b vs. 267d). A processing device processes the information. (Limitation ID. 317c vs. 267b). The processing device generates a signal regarding the transaction. (Limitation ID. 317d vs. 267f).   Then a transmitter sends the signal to a communication device associated with the account holder. (Limitation ID. 317g and 317j vs. 267g and 267j).   The communication device provides information to the account holder. (Limitation ID. 317k and 317 l vs. 267k and 267l).

Exhibit 9 shows the correspondence of the structures and function between '003 claim 317 and invalid '725 claim 267. In both claims 317 and 267, an input device (1) provides information to a processing device (2).   The processing device (2) then generates a signal (3) containing information about the transaction.   That signal (3) is sent to a transmitter(4) which send the information to an Account Holder Communication Device (5).   This identical structural correspondence demonstrates the identical claim scope as between claim 317 and 267.[7]

**E.     Claim 370 of the '003 Patent is Identical in Scope to Invalid Claim 267 of the '725 Patent and Therefore Claim 370 Also is Invalid.**

Exhibit 10 contains the text comparison between '003 claim 370 and '725 267.   Claim 370 first sends information about a transaction on an account from a "transaction device" to a receiver. (Limitation No. 370b and 370c vs. 267d ).   In '725 claim limitation 267d, a receiver automatically receives such information. The existence of a "transaction device" or "input device" that sends information to the claim 267 receiver is inherent, for without some such

---

[7] Like '003 claim 30, claim 317 calls for the information or signal to be transmitted over the "world wide web or the Internet."   Again, this is not a patentable distinction.   *Soverain Software v. Newegg, supra.*

13

device, there would be no way to get information to the receiver in '725 claim 267. The information received by the '725 claim 267 receiver is the "first signal" of '003 claim 370.

The received information in both claim 370 and 267 is passed from the Receiver to a "Processing Device." (Limitation No. 370m vs. 267b and 267f). In both '003 claim 370 and '725 claim 267, the Processing Device processes the first signal information to generate a second signal. (Limitation No. 370m vs. 267b and 267f). Then that second signal information is made available to the individual account holder by means of the communication device. (Limitation No. 370n vs. 267g and 267h and 267i). The scope of these two claims is the same. While a greater number of words are used in claim 267 the structure of the apparatus is the same and the same functions are performed. This is more easily observed in the Exhibit 11 structural comparison.

Exhibit 11 shows that both '003 claim 370 and '725 claim 267 comprise inputting a first signal (1) to a receiver (2). In '003 claim 370, this is done by a "transaction device (1). In '725 claim 267, the particular device is not identified, but is inherently present in the claim as the claim 267 receiver (2) "automatically receives" information (the first signal) from some source (see, Limitation No. 267d). The information is then provided to a processing device (3) in both claims. The processing device processes the first signal and generates a second signal (4). This second signal is then sent (4) from the processor to the communications device of the individual account holder (5) to provide the information to the individual account holder.

### F.   Claim 414 of the '003 Patent is Identical in Scope to Invalid Claim 267 of the '725 Patent and Therefore Claim 414 Also is Invalid.

Claim 414 of the '003 Patent in identical scope to invalid '725 claim 267, except for the addition of Internet transmission in '003 claim 414. Also, '003 claim 414 eventually transmits the signal generated by the processor to two locations instead of one, as in '725 claim 267. But

merely repeating a claimed function in an apparatus is obvious and is not a patentable distinction over invalid claim 267 of the '725 Patent.

Exhibit 12 shows the correspondence between invalid '725 claim 267 and '003 claim 414. Both claims have a processing device for processing information about a banking transaction. (Limitation ID. 414b vs. 267b). The banking transaction relates to a bank account and is input by an input device and received by a receiver. (Limitation ID. 414c and 414d vs. 267c and 267d). The processing device is capable of allowing or disallowing the transaction. (Limitation ID. 414e vs. 267e). In both claims, the processing device generates a signal that has information regarding the bank transaction and a transmitter to transmit the signal. (Limitation ID. 414f and 414g vs. 267f and 267g). In limitations 414h, 414i 414j 414k and 414l, the signal is sent to two locations – to a "Network Computer" and to an account holder's communication device. In '725 claim 267, the same information is transmitted only to the account holder's communication device. (Limitation ID. 267h, 267i and 267j). But merely having a second location receive the transmission is an obvious non-patentable modification.

Exhibit 13 shows the correspondence of structure as between '003 claim 414 and invalid '725 claim 267. Both claims 414 and 267 comprise an input device (1) (or automatic receipt by a receiver) that provides information to a processing device (2). The processing device (2) then generates a signal (3) containing information about the transaction. That signal (3) is sent to a transmitter (4). The transmitter (4) then sends the signal another device (5). In claim 267 the signal was only transmitted to an Account Holder Communication Device. In claim 414 the signal is transmitted to the Account Holder Communication Device and to a second device – a Network Computer (Exhibit 13).

This identical structural correspondence demonstrates the identical claim scope as between claim 414 and 267. The transmission of the signal to a second device is an obvious modification that does not confer patentability on claim 414. Doing something twice is not a patentable distinction over doing it once; it is simply a predictable variation. *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S. Ct. 1727, 1740 (2007) (If a person of ordinary skill can implement a predictable variation, § 103 obviousness likely bars its patentability).

The scope of claim 414 of the '003 Patent is the same as the scope of invalid claim 267 of the '725 Patent. Claim 414 is invalid by collateral estoppel claim preclusion.

### G.    Joao's Prior Art Submissions to the Patent Office Do Not Obviate Collateral Estoppel.

Plaintiff has suggested that collateral estoppel should not operate because the '003 claims are different from the '725 claims, in that the '003 patent has a different file history.[8] But this does not matter, because the *Sleepy Hollow* court found that Jack Henry had carried its burden of showing that the '725 claims were invalid based on clear and convincing evidence. (Stitt Dec'l., Ex. 2, p. 2 (first WHEREAS clause)). Whether collateral estoppel applies here depends on whether the present '003 claims have the same scope as the invalidated '725 claims. None of the relevant cases -- *Guidant v. Medinol, Bourns, Westwood Chemical, CollegeNET* and *Ohio Willow Wood* -- considered any differences between the two patents' file histories as relevant to a collateral estoppel analysis.

Because Jack Henry proved the '725 claims invalid by clear and convincing evidence, those invalidity findings are binding on JBTS without regard to any differences between the '725

---

[8] Plaintiff's counsel made this suggestion at the status conference on January 6, 2014. Jack Henry believes that the difference on which plaintiff is relying is that during the prosecution of the '003 patent, Joao submitted to the PTO some prior art references that Jack Henry had produced to JBTS during discovery in the *Sleepy Hollow* action, including Jack Henry's Cash Management product and the Blonder, Deming and Fulton patents.

and '003 file histories.  True "when the party asserting invalidity relies on references that were considered during examination . . . that party bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job." *PharamStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007). However, "[t]hat high burden is reflected in the clear and convincing evidence burden for proving invalidity." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012). "Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity." *Id.*  "[C]ourts may take cognizance of, and benefit from, the proceedings before the patent examiner," but "the question [of validity] is ultimately for the courts to decide, without deference to the rulings of the patent examiner." *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991).

And an examiner's decision to allow the '003 Patent over references the *Sleepy Hollow* court found invalidated the '725 patent is no more binding on Jack Henry—which was not, of course, a party to the '003 examination--than if a court had actually adjudged the patent valid in an action in which Jack Henry was not a party. *See, e.g., Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1569 (Fed. Cir. 1993) ("[T]he factual findings and legal conclusions in [a prior adjudication] cannot be used as a collateral estoppel against defendants who were not parties to that case.").  Even if the decision of the USPTO rose to the level of a prior adjudication in favor of JBTS, "where there have been inconsistent prior determinations of validity, the only permissible inquiry for the district court is whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit." *Mississippi Chem. Corp. v. Swift Agr. Chem. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983).  JBTS cannot dispute that it had such an opportunity in *Sleepy Hollow*.

Jack Henry proved by clear and convincing evidence that the '725 claims were invalid. The Court's entry of a final judgment to that effect is all that matters for collateral estoppel purposes.

**VII.    THE ASSERTED DEPENDENT CLAIMS FROM THE '003 PATENT ARE SIMILARLY INVALID BASED ON THE INVALIDITY OF THE '725 CLAIMS.**

It is not necessary to   deal with the dependent claims in as much detail, because they are either indistinguishable from the '725 dependent claims or any differences are minor differences that do not rise to the level of patentability.

**A.    Dependent '003 Claims 31, 34, 35 and 41 Add Nothing Patentable to Claim 30 and are Invalid in View Of '725 Patent Claim 109.**

The '003 patent claims 31, 32, 34 and 41 only add a transmitter and, in the case of claim 32, receiving additional signals having particular information.   These do not add to the subject matter of independent claim 30.   Invalid claim 109 of the '725 Patent added a transmitter to invalid claim 108. Therefore '003 dependent claims 31, 34 and 41 are invalid by collateral estoppel in view of claim 109.   Similarly, '003 Claim 35 simply identifies the communication device of claim 30 as being a personal computer or a home computer.   This is not a patentable distinction over the prior art.

**B.    Dependent '003 Claims 106, 108, 122 and 125 Do Not Add A Patentable Distinction To Invalid '725 Claim 109.**

Claim 106 in the '003 Patent is essentially identical to invalid claim 109 of the '725 patent and also is therefore   invalid.   Both only add a transmitter   that transmits a "second signal."   Because '725 Claim 109 was adjudicated to be invalid, so is '003 Claim 106.

Claim 108 in the '003 patent only recites that the apparatus receives additional (second and third) signals from the communication device.   But an apparatus is distinguished by what it is, not what it does. The repetition of activities already performed in claim 102 is not a patentable

18

difference from the '725 claims that were held to be invalid.  Claim 122 states that the limitation or restriction is a particular subject matter (*e.g.*, a type of transaction or a spending limit, etc.). Again, this is not a patentable difference.  Claim 125 adds only that claim 102 comprises a plurality of computers.  Using multiple computers in the Claim 102 apparatus is not a patentable difference over the prior art.  Because '003 claim 102 is invalid based on collateral estoppel, so is claim 125.

### C.   The Dependent Claims in the "003 Patent Related to Independent Claim 317 Do Not Provide a Patentable Distinction From '725 Claim 267.

Claim 318 in the '003 Patent merely adds a receiver to claim 317. A receiver is present in '725 claim 267, which was held to be invalid. Therefore, 003 claim 318 is invalid due to collateral estoppel.  Claim 320 recites that the receiver repeats the receiving activity of claim 317.  The repetition of the same activity is not a patentable difference. In Claim 324 the transaction is an "internet transaction."  Whatever this means, it is not a patentable distinction over Claim 317, which is invalid based on collateral estoppel.  Claim 327 merely adds a display device or a printer for outputting information.  A person of ordinary skill in the art would not find this to be a patentable difference versus Claim 317.  Claim 330, which defines the apparatus to be one of several types of banking terminals, does not create a patentable distinction in that it merely list various alternative devices which may be "the apparatus." Claim 331 merely adds a reading device or a scanner to '03 Claim 317 and is obvious to one skilled in the art.

Claim 337 add actions performed by the claim 317 apparatus.  As an apparatus claim is distinguished by what it is and not what it does, claim 337 is not a patentable difference. Claim 340 provides a list specific types of information (*e.g.*, name of a bank or financial institution and account number etc.) that the signal contains and is not a patentable difference.  Claim 342 simply says that the processing device performs some additional activity.  It does not add new

19

structure to the apparatus.  Claim 343 states the communication is a wireless device and is an obvious design choice.

### D.     Dependent Claims 371, 372 and 374 Do No Provide A Patentable Difference From Claim 370.

Claim 317 adds a transmitter that transmits a third signal to another device.  A transmitter is provided in invalid claim 293 of the '725 patent.  The change in the subject matter content and the particular device receiving the transmission is an obvious design choice.  Claim 372 makes the transmission via the Internet. As noted above, this is nothing more than an obvious and unpatentable distinction.  Claim 374 adds a display device for displaying information and specifies particular information in the second signal and is obvious.

### E.     '003 Patent Claims 416, 417, 418, 419, 420 and 423 Are Invalid As Adding No Patentable Distinction To Claim 415.

Claim 416 identifies the "communication device" as "a wireless device." This is obvious. Claim 417 identifies the "communication device" as a personal computer or a home computer and is obvious.  Claim 418 and claim 419 and claim 420 identifies the banking transaction as being a type of banking transaction and as such does not provide a patentable distinction to claim 415.  Claim 422 says only that the processing device performs some additional functions.  It does not add new structure and is therefore obvious.  Claim 423 identifies the transmission as being via the internet and is obvious.

None of the dependent '003 claims contain any non-obvious patentable additions to the invalidated '725 claims, nor to the '003 dependent claims which are invalid by collateral estoppel.  Therefore, the dependent claims in the '003 patent are invalid as well.

### VIII.   CONCLUSION

For the reasons stated above, this Court should grant summary judgment of invalidity on the claims in suit based on collateral estoppel.

46512697.5

Dated: January 24, 2014
      Wilmington, Delaware

**POLSINELLI PC**

/s/     *Shanti M. Katona*
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware  19801
Telephone:   (302) 252-0920
Facsimile:  (302) 252-0921
skatona@polsinelli.com

OF COUNSEL:
Russell S. Jones, Jr.
Richard P. Stitt
Joshua M. McCaig
Polsinelli PC
Twelve Wyandotte Plaza,120 W. 12th Street
Kansas City, MO 64105
Telephone:  (816) 421-3355
Facsimile:   (816) 374-0509
rjones@polsinelli.com
rstitt@polsinelli.com
jmccaig@polsinelli.com

*Attorneys for Jack Henry & Associates, Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned certifies that a copy of the foregoing pleading was served upon all counsel of record via the United States District Court for the District of Delaware's ECF Document Filing System on the 24th day of January, 2014.

Stamatios Stamoulis
Richard C. Weinblatt
Stamoulis & Weinblatt LLC
Two Fox Point Centre
6 Denny Road , Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com
*Attorneys for Plaintiff*

Steven W. Ritcheson
Joseph C. Gabaeff
Heninger Garrison Davis, LLC
9800 D. Topanga Canyon Blvd., #347
Chatsworth, CA 91311
Telephone: 818-274-1883
Facsimile: 818-337-0383
swritcheson@hgdlawfirm.com
jgabaeff@hgdlawfirm.com
*Attorneys for Plaintiff*

Jonathan R. Miller
Jacqueline K. Burt
Heninger Garrison Davis, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
jmiller@hgdlawfirm.com
jburt@hgdlawfirm.com
Telephone:  (404) 996-0863, 0861
Facsimile:  (205) 547-5506, 5502
*Attorneys for Plaintiff*

M. Blair Clinton
Heninger Garrison Davis, LLC
2224 1st Avenue North
Birmingham, AL 35203
bclinton@hgdlawfirm.com
Telephone:  (205) 327-9116
Facsimile:  (205) 380-8082
*Attorneys for Plaintiff*

Maureen V. Abbey
Heninger Garrison Davis, LLC
220 St. Paul Street
Westfield, NJ 07090
Telephone:  (908) 379-8475
Facsimile:  (205) 547-5500
*Attorneys for Plaintiff*

/s/ *Shanti M. Katona* _____
Shanti M. Katona (Del. Bar No. 5352)
*Attorney for Defendant*

22

46512697.5