**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

JOAO BOCK TRANSACTION SYSTEMS, LLC,

Plaintiff,

v.

JACK HENRY & ASSOCIATES, INC.,

Defendant.

Case No. 1:12-CV-01138 (SLR)

Judge Sue L. Robinson

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S**
**MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL**
**ESTOPPEL**

Dated: <u>February 25, 2014</u>

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis #4606
stamoulis@swdelaw.com
Richard C. Weinblatt #5080
weinblatt@swdelaw.com
**Stamoulis & Weinblatt LLC**
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, Delaware 19809
Telephone: (302) 999-1540

Steven W. Ritcheson, *Pro Hac Vice*
**Heninger Garrison Davis, LLC**
9800 D Topanga Canyon Boulevard, #347
Chatsworth, California 91311
Telephone: (818) 882-1030
Facsimile: (205) 326-3332
swritcheson@hgdlawfirm.com

Jonathan R. Miller, *Pro Hac Vice*
Jacqueline K. Burt, *Pro Hac Vice*
**Heninger Garrison Davis, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0863, 0861
Facsimile: (205) 547-5506, 5502
jmiller@hgdlawfirm.com
JBurt@hgdlawfirm.com

Maureen V. Abbey, *Pro Hac Vice*
**Heninger Garrison Davis, LLC**
220 St. Paul Street
Westfield, New Jersey 07090
Telephone: (908) 379-8475
Facsimile: (205) 547-5500
maureen@hgdlawfirm.com

M. Blair Clinton, *Pro Hac Vice*
**Heninger Garrison Davis, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 327-9116
Facsimile: (205) 380-8082
bclinton@hgdlawfirm.com

*Attorneys for Plaintiff Joao Bock Transaction Systems, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ IV

I.      INTRODUCTION ................................................................................ 1

II.     NATURE AND STAGE OF PROCEEDINGS .................................... 1

III.    SUMMARY OF ARGUMENT ........................................................... 1

IV.     STATEMENT OF FACTS ................................................................... 2

V.      LEGAL STANDARD .......................................................................... 3

        A.      Summary Judgment ................................................................ 3

        B.      Collateral Estoppel ................................................................. 4

        C.      Scope Of Patent Claims ......................................................... 5

VI.     ARGUMENT ......................................................................................... 6

        A.      The Issues Raised Here Were Not Previously Litigated ........ 6

                1.      Claim Construction of the Terms in the Asserted
                        Claims Differs. ............................................................. 6

                2.      The Abstract of the Patents Describes the Differences
                        of the Scope of the Inventions of Each Patent. ........... 8

                3.      The '003 Asserted Claims Terms Have New and
                        Different Claim Elements. .......................................... 10

        B.      None Of The Prior Art Addresses The Internet Or The
                "Transaction Security Apparatus" For The Internet .......... 13

        C.      Plaintiff Did Not Have The Opportunity To Fully Litigate
                The Issues Relating To The Validity Of The '003 Asserted
                Claims .................................................................................... 15

        D.      The Jury Verdict Form And The Judgment Leave Little To
                No Factual Evidence On Which To Rely Upon For
                Collateral Estoppel ............................................................... 16

        E.      Defendant Is Bound To Its Earlier Position ......................... 18

        F.      The Prosecution History Of The '003 Patent Requires A
                Different Analysis Of The As-Issued Claims And The Prior
                Art References ....................................................................... 18

VII.    CONCLUSION ................................................................................... 20

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

# TABLE OF AUTHORITIES

## Cases

Abbott Labs. v. Andrx Pharma., Inc., 473 F.3d 1196 (Fed.Cir. 2007) ........................................... 4

Al–Site Corp. v. YSI Int'l, Inc., 174 F.3d 1308 (Fed.Cir.1999) .................................................... 19

Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313 (1971) .......................... 4, 5

Bonzel v. Pfizer, Inc., 439 F.3d 1358 (Fed. Cir. 2006) .................................................................. 18

Carter-Wallace, Inc. v. U.S., 496 F.2d 535 (1974) .......................................................................... 5

CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359 (Fed. Cir. 2002) ........................................ 6

Cephalon, Inc. v. Impax Labs., Inc., No. 11–1152–SLR, 2012 WL 3867568
        (D. Del. Sep. 6, 2012) ......................................................................................................... 4

Pa. Coal Ass'n v. Babbitt, 63 F.3d 231 (3d Cir. 1995) .................................................................... 4

Cordis Corp. v. Boston Scientific Corp., 635 F.Supp.2d 361 (D. Del. July 21,
        2009) (SLR) ........................................................................................................................ 3

Golden Bridge Technology, Inc. v. Apple Inc., 937 F. Supp.2d 490 (D. Del.
        2013) (SLR) .............................................................................................................. 6, 7, 16

Graham v. John Deere Co., 383 U.S. 1 (1966) ........................................................................ 5, 6, 7

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300 (3d Cir. 1995) .................................... 3

Hy-Ko Products Co. v. The Hillman Group, Inc., No. 5:08 CV 1961, 2012 WL
        4434610 (N.D. Ohio Sep. 24, 2012) ................................................................................ 19

Impax Labs., Inc. v. Aventis Pharms., Inc., 545 F.3d 1312 (Fed. Cir. 2008) ............................... 19

Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d
        1111 (Fed. Cir. 2004) ....................................................................................................... 6, 7

Interconnect Planning Corp. v. Feil, 774 F.2d 1132 (Fed. Cir. 1985) ........................................... 5

Intervet Am., Inc. v. Kee–Yet Labs., Inc., 887 F.2d 1050 (Fed.Cir.1989) .................................... 19

itronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996) ............................................. 6

Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244 (3d Cir.
        2006) ................................................................................................................................... 4

Kearns v. General Motors Corp., 94 F.3d 1553 (Fed. Cir. 1999) ................................................. 19

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en
        banc), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996) ........................... 6

Matsushita Elec. Indus. Co. v. Zenith-Radio Corp., 475 U.S. 574 (1986) ................................ 3, 4

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

Medinol Ltd. v. Guidant Corp., 341 F.Supp.2d 301 (S.D. N.Y. 2004)......................................... 13

Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., No. 98–80–SLR,
      2004 WL 2980734 (D. Del. Dec. 17, 2004)....................................................................... 19

MobileMedia Ideas, LLC v. Apple Inc., 907 F. Supp. 2d 570 (D. Del. 2012) ............................ 18

Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473 (Fed. Cir. 1998)............................. 6

Mycogen Plant Sci., Inc. v. Monsanto Co., 252 F.3d 1306 (Fed.Cir. 2001) ................................. 5

Ohio Willow Wood Co. v. ALPS South, LLC, No. 2:04–cv–1223, 2012 WL
      2196083 (S.D. Ohio June 15, 2012) ................................................................................. 13

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005)......................................................... 6, 7

Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc., No. 08-309-JJF-
      LPS, 2009 WL 4928029 (D. Del. Dec. 19, 2009)............................................................. 16

Rowe Int'l Corp. v. Ecast, Inc., 586 F.Supp.2d 924 (N.D. Ill. 2008) ......................................... 15

Senju Pharma. Inc. v. Lupin Ltd., No. 11–271–SLR, 2012 WL 6090354 (D.
      Del. Dec. 7, 2012)...................................................................................................... 4, 12, 13

Soverain Software, LLC v. Newegg Inc., 705 F.3d 1333 (Fed. Cir. 2013)................................... 15

U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592 (Fed. Cir. 1995)................................. 18

Westwood Chem., Inc. v. United States, 525 F.2d 1367 (Ct. Cl. 1975)......................................... 5

## Statutes

35 U.S.C. §112.......................................................................................................................... 6

35 U.S.C. §282..................................................................................................................... 5, 13

## Rules

Fed. R. Civ. Proc. 56(c) ............................................................................................................. 3

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

## I.   INTRODUCTION

The scope of the Asserted Claims of United States Patent No. 7,096,003 (hereinafter, the "'003 Patent" or "Patent-in-Suit") is patentably different from the six (6) claims of U.S. Patent No. 6,529,725 (hereinafter, the "'725 Patent" that were found invalid in a previous case.  This patentable difference is significant and ultimately, the issues as to the scope of the Asserted Claims of the '003 Patent are not substantially identical to the six claims of the '725 Patent.  Thus, Defendant's motion for collateral estoppel (D.I. 57-59) should be denied.  Plaintiff incorporates by reference the entirety of Plaintiff's concurrently filed "Cross-Motion For Summary Judgment Of No Collateral Estoppel."

## II.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff Joao Bock Transaction Systems, LLC (hereinafter, "JBTS" or "Plaintiff") filed its complaint on September 14, 2012 against Defendant Jack Henry & Associates, Inc. (hereinafter, "Defendant" or "Jack Henry").  (D.I. 1).  Fact discovery opened and patent disclosures have been exchanged.  Document productions are mostly complete, and depositions are being conducted.  Fact discovery closes on or about March 12, 2014.  The Parties agreed that briefing on the issue(s) of collateral estoppel effect of a prior litigation would be worthwhile to argue before this Court to resolve certain aspects of this litigation in preparation for trial.  In addition to this Opposition to Defendant's motion, JBTS has also filed concurrently a Motion for Summary Judgment of No Collateral Estoppel.

## III.   SUMMARY OF ARGUMENT

Defendant's motion for summary judgment of collateral estoppel fails to take into consideration the totality of the facts and the applicable law to the case at hand.  The Asserted Claims of the '003 Patent are patentably distinct from the '725 Asserted Claims that were

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

previously found to be invalid.  As Plaintiff demonstrates herein, important evidence material to determining the scope of the claims of the '003 Asserted Claims is left out of Defendant's argument.  There are many added claim elements in the '003 Asserted Claims that are not present in the '725 asserted claims.  Moreover, the constructions of the claim terms vary, even though the patents are related.  The law and the evidence do not support a motion for summary judgment of collateral estoppel, and Defendant's motion should be denied.

## IV.    STATEMENT OF FACTS

The patentees of the '003 Patent filed a continuation application claiming priority to the '725 patent.  During prosecution of the '003 patent's claims, the patentees sought to narrow and alter the scope of the invention both through additional language in the claims, and by submitting definitions for the language of those claim terms, and using different phraseology for the claims themselves.  *See* <u>Declaration of Expert Ivan Zatkovich</u>, ("Expert Decl."); at pp. 20-35, and pp. 36-246; see **Exhibit A** to Decl.: Sept. 12, 2005 Preliminary Amendment in '003 File History; Exhibit B to Decl.: Oct. 16, 2004 Preliminary Amendments in '003 File History.  During the prosecution of the '003 Patent, the patentees also sought to have the prior art references that were used for § 103 arguments in the earlier '725 patent litigation considered during examination of the '003 patent in order to address these materials during prosecution so that the claims that would ultimately issue were be stronger and better understood in view of that prior art.

The '725 patent litigation commenced with the filing of the complaint against Sleepy Hollow Bank on December 24, 2003.  *See* Exhibit A (SDNY Dkt. No. 1).   Jack Henry subsequently was joined as a Defendant.  *See* <u>Id</u>. (SDNY Dkt. No. 5).  A jury trial was conducted in March 2010, and the jury ultimately found the claims of the '725 Patent that were asserted to be invalid.  *See* <u>Id</u>. (SDNY Dkt. No. 228).  The Special Verdict Form (D.I. 58-1) did not contain

specific information as to the factual findings of the jury, or the basis of its findings as to the invalidity of those claims.  Plaintiff submitted a Motion for Reconsideration, which was denied. (SDNY Dkt. No. 230, 233).  Plaintiff appealed the decision to the Federal Circuit, which later issued a *per curiam* affirmation of the district court judgment, without opinion.  *See* Id. (SDNY Dkt. No. 250).  On September 14, 2012, Plaintiff filed this lawsuit against Defendant, and identified a number of its products as infringing the '003 Asserted Claims.  *See* Notice of Asserted Claims; Notice of Initial Infringement Contentions, attached hereto as **Exhibits B, C**.

## V.      LEGAL STANDARD[1]

### A.  <u>Summary Judgment</u>

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material act and that the moving party is entitled to judgment as a matter of law."  <u>Cordis Corp. v. Boston Scientific Corp.</u>, 635 F.Supp.2d 361, 365 (D. Del. July 21, 2009) (SLR) (*quoting* Fed. R. Civ. Proc. 56(c)).  The burden is on the moving party to demonstrate that no genuine issue of material fact exists.  <u>Id</u>. (*citing* <u>Matsushita Elec. Indus. Co. v. Zenith-Radio Corp.</u>, 475 U.S. 574, 586 n. 10 (1986)).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  <u>Id</u>. (*quoting* <u>Horowitz v. Fed. Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 (3d Cir. 1995)).  If the moving party is successful in demonstrating that there is an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  <u>Id</u>. (*citing* <u>Matsushita</u>, 475 U.S. at 587).  The facts and evidence are

---

[1] JBTS incorporates by reference references cited in its Cross-Motion filed contemporaneously herewith.

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

viewed by the Court in a light most favorable to the non-moving party.  Id. (citing Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995)).

## B.  Collateral Estoppel

In patent litigation, defensive collateral estoppel may be used if the accused infringer shows: "(1) that a patent was found invalid in a prior case that had proceeded through final judgment and in which all procedural opportunities were available to the patentee; (2) that the issues litigated were identical; and (3) that the party against whom estoppel is applied had a full and fair opportunity to litigate."  Cephalon, Inc. v. Impax Labs., Inc., No. 11–1152–SLR, 2012 WL 3867568, at *2 (D. Del. Sep. 6, 2012) (citing Abbott Labs. v. Andrx Pharma., Inc., 473 F.3d 1196, 1203 (Fed.Cir. 2007) and quoting Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313 (1971)).  Regional Circuit law controls the determination of whether prior findings invoke collateral estoppel pursuant to these guidelines.  Abbott Labs., 473 F.3d. at 1202–1203. In the Third Circuit, collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  Cephalon, Inc., 2012 WL 3867568, at *2 (quoting Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006)).  The Third Circuit also considers whether the party being precluded had "a full and fair opportunity to litigate the issue in question in the prior litigation" and whether the issue was determined by final judgment.  Id.

A judgment of invalidity in one patent action operates to bar relitigation of the validity of the same patent in a subsequent action, by collateral estoppel.  Senju Pharma. Inc. v. Lupin Ltd., No. 11–271–SLR, 2012 WL 6090354, *2 (D. Del. Dec. 7, 2012) (citing Blonder–Tongue, 402 U.S. at 349–350).  Further, unadjudicated patent claims may be barred by collateral estoppel if "'the

issue of invalidity common to each action is substantially identical.' It is the issues litigated, not the specific claims around which the issues were framed, that is determinative." Id. (*quoting* Westwood Chem., Inc. v. United States, 525 F.2d 1367, 1372 (Ct. Cl. 1975)). Collateral estoppel may also operate to bar relitigation of common issues in actions involving different but related patents. Mycogen Plant Sci., Inc. v. Monsanto Co., 252 F.3d 1306, 1310 (Fed.Cir. 2001).

When determining whether estoppel applies, the first consideration is "whether the issue of invalidity common to each action is substantially identical." Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1136 (Fed. Cir. 1985) (*quoting* Carter-Wallace, Inc. v. U.S., 496 F.2d 535, 538 (1974)). Each claim is still entitled to the presumption of validity afforded it by the Patent Laws. Id. at 1137 (citing 35 U.S.C. §282). Where obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is more properly phrased in terms of the factual inquiries mandated by Graham v. John Deere Co., 383 U.S. 1, 17 (1966), as a prerequisite to such a validity determination. Interconnect Planning, 774 F.2d at 1136. Applying the Graham factors, the inquiry should be whether the nonlitigated claims present new issues as to the art pertinent to the nonlitigated claims; as to the scope and content of that art; as to the differences between the prior art and the nonlitigated claims; and as to the level of ordinary skill in that art. Id. (*citing* Westwood Chemical, 525 F.2d at 1375. If none of these inquiries raises any new triable issues, then the obviousness determination in the prior proceeding should be equally applicable to the nonlitigated claims. Id.

## C.  Scope Of Patent Claims

In order to understand whether the scope of the claims from the '725 patent have the same scope as the Asserted Claims of the '003 Patent, and thus, whether the issues of validity or nonobviousness are the same for each set of asserted claims, an analysis of the claims' scope is

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

necessary.  "The claim 'define[s] the scope of a patent grant.'"  <u>Markman v. Westview</u>

<u>Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc), aff'd*, 517 U.S. 370, 116 S. Ct.

1384, 134 L. Ed. 2d 577 (1996), quoting 35 U.S.C. §112 (additional citation omitted).  "It is a

"bedrock principle" of patent law that "the claims of a patent define the invention to which the

patentee is entitled the right to exclude."  <u>Innova/Pure Water, Inc. v. Safari Water Filtration</u>

<u>Systems, Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *see also* <u>Vitronics Corp. v. Conceptronic,</u>

<u>Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves ... to

define the scope of the patented invention")."  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312

(Fed. Cir. 2005).[2]  The court must also consider the patent's prosecution history, if it is in

evidence.  <u>Id.</u> at 1316 (*quoting* <u>Markman</u>, 52 F.3d at 980), *see also* <u>Graham</u>, 383 U.S. at 33.  In

addition, "the claims themselves provide substantial guidance as to the meaning of particular

claim terms."  <u>Phillips</u>, 415 F.3d at 1315; *see also*, <u>Golden Bridge Technology, Inc. v. Apple</u>

<u>Inc.</u>, 937 F.Supp.2d 490, 496-497 (D. Del. 2013) (SLR).

## VI.    ARGUMENT

### A. <u>The Issues Raised Here Were Not Previously Litigated</u>

#### 1.  **Claim Construction of the Terms in the Asserted Claims Differs.**

A  proper  analysis  of  the  scope  of  the  asserted  claims  demonstrates  they  are  not

substantially identical in scope to the six claims of the '725 Patent.  In order to understand

whether the scope of the claims from the '725 patent (hereinafter the "'725 Asserted claims")

have the same scope as the Asserted Claims of the '003 Patent (hereinafter, the "'003 Asserted

---

[2] The "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including  the  specification."   <u>Phillips</u>,  415  F.3d  at  1313.   The  inventor's  lexicography,  if provided by the inventor(s), governs the meaning of the claim term(s).  *See* <u>CCS Fitness, Inc. v. Brunswick Corp.</u>, 288 F.3d 1359, 1366 (Fed. Cir. 2002).  That meaning is to be understood and interpreted by the court as a person of skill in the art would understand it to mean.  <u>Id.</u> (*citing* <u>Multiform Desiccants, Inc. v. Medzam, Ltd.</u>, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY**
**JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

Claims"), and thus, whether the issues of validity or nonobviousness are the same for each set of asserted claims, an analysis of these claims' scope is necessary.  The law of claim construction governs this inquiry.  "It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips, 415 F.3d at 1312 (*quoting* Innova, 381 F.3d at 1115).  Here, the patentees provided definitions during prosecution which give new and different meaning to the terms used in the '003 Asserted Claims.  This is a significant distinction from the meanings attributed by the court to claim terms of the '725 asserted claims in the earlier litigation.  *See* Expert Decl. at pp. 20-25, Ex. A and B, attached thereto.  *See* Phillips, 415 F.3d at 1316-1317; Graham, 383 U.S. at 33 (the scope of the claims is measured by the specification, and the prosecution history). These definitions were provided after litigation had commenced regarding the '725 asserted claims, and after the claim construction process of those claims.  Patentees, upon seeing how a litigation could impact the definition of terms, and wanting to further secure and define their invention to avoid future disputes on the meaning of the claim terms, specifically defined the terms of the '003 Asserted Claims to eliminate any doubts as to what they, the inventors, intended as to the claim terms and thus, the scope of the invention.

In contrast, the court construed the '725 asserted claims without the prosecution history of the '003 Patent and without the benefit of any definitions from patentees.  These definitions are new evidence that was not considered by the prior court, and collateral estoppel does not apply.  *See* Golden Bridge Tech., 937 F.Supp.2d at 496-497.  For example, the term "limitations or restrictions" used in claim 102 of the '003 Patent define the "bounds" within which a transaction may occur.

> "Limitation" means "something that limits or restricts, or something that restrains, or something that bounds or restrains or confines within bounds, or a restraining

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

or confining or bounding rule or condition, or a restraint."  Sept. 12, 2005 Prelim Amendment to the '003 Patent p.157.[3]

Confining a transaction within bounds allows minimum and maximum bounds, or other types of bounds, for the transaction.  Expert Report at pp. 36-246.  These other bounds include setting a minimum or maximum amount for a transaction authorized to occur on an account.  Another bound may be defining the person authorized to initiate the transaction, or a store at which the person is permitted to initiate a transaction.  These are just a few examples contemplated by the '003 Asserted Claims.  In contrast, the "limitations or restrictions" of claim 108 of the '725 Patent prevent a transaction from occurring at all.  *See* Expert Report, at p. 29, 32, pp. 36-246. The "limitation or restriction" of the '725 asserted claims is a bound that prohibits, or forbids the transaction, or does not.  See Expert Report, at pp. 28, 31-32, 38-50, 80-96, and 239-242.  These are not the same "bounds" as used in the '003 Asserted Claims.  By defining the term in this manner, and using the term within the context of the '003 Asserted Claims, the invention is patentably distinct and covers a completely different scope of the field of art.

Defendant's comparison of the claims on a word-for-word comparison is an improper analysis, and erroneous under the law.  These definitions are substantially different from the constructions provided by the earlier court in the litigation of the claims from the '725 Patent. Thus, the scope of the invention set forth in the '003 Asserted Claims is patentably distinct and not the same as the invention of the '725 asserted claims.

2.  **The Abstract of the Patents Describes the Differences of the Scope of the Inventions of Each Patent.**

The Abstract of the '003 Patent provides the overall context for understanding the

---

[3] "Restriction" means "something that restricts or limits, or something that restrains, or something that bounds or restrains or confines within bounds, or a restraining or confining or bounding rule or condition, or a restraint."  Sep. 12, 2005 Prelim Amendment to the '003 Patent p.166.  *See*, Expert Decl. at Ex. A, pp. 20-35.

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

invention set forth in the claims of the '003 Patent.

> An apparatus including a memory device for storing a limitation or restriction on an account use received via the Internet and/or World Wide Web and a processing device for determining whether a transaction on the account or a use of a wireless or cellular communication device is authorized, allowed, or disallowed. An apparatus including a processing device for processing information regarding a banking transaction or use of a wireless or cellular communication device and generating a signal containing information regarding the transaction or device use and a transmitter for transmitting the signal to a communication device. An apparatus including a processing device for processing transaction information and generating a signal containing transaction information, and a transmitter for transmitting the signal to a communication device via the Internet and/or World Wide Web independently of transaction processing by a central transaction processing computer.

A comparison of this Abstract to the Abstract of the '725 Patent provides a synopsis of how the inventions differ, and how the '003 Patented invention was further narrowed to focus upon the security concerns that arose as a result of the Internet being adopted and used for banking and financial processing. *See also* Expert Decl, at pp. 16-19. The Abstract of the '725 Patent is broader and differs in scope of the invention.

> A transaction security apparatus and method including an input device for inputting transaction data, a processing device for processing the transaction data and for generating a first signal corresponding to the transaction, and a transmitter for transmitting the first signal over a communication network directly to a communication device associated with an individual account holder. The communication device provides notification to the individual account holder of the transaction.

The Abstract of the '003 Patent highlights the narrower focus of this patent, when compared to the '725 Patent. The '003 Asserted Claims in the instant case focus upon activity that occurs on the Internet, and the "transaction security apparatus" of the '003 Asserted Claims is further focused to address security concerns of that arose through using the Internet for financial services (banking, payment processing, etc.). These security concerns are different and distinct from security concerns of other forms of communication and transaction processing which formed part of the '725 asserted claims. Expert Decl, at pp. 16-19. The evidence for these

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

differences is found in the intrinsic evidence of the '003 Patent: (1) the prosecution history, (2) the specification, and (3) the language of the claims themselves. Id.

### 3. The '003 Asserted Claims Terms Have New and Different Claim Elements.

The scope of the '003 Asserted Claims is not substantially identical to the scope of the '725 asserted claims. The claim language of the '003 Asserted Claims has a number of patentably distinct and different claim elements that do not appear in, and are not part of, the '725 asserted claims. A detailed discussion of these different claim elements are set forth in the chart attached as Expert Decl, at pp. 36-246. For example, the preamble of the '003 Asserted Claims was defined by the patentees and attributed by the patentees as meaningful recitation giving essential structure and disclosing fundamental characteristics of a claim element in those claims. Expert Decl, at pp. 16-19. The preamble in the '725 asserted claims was found by the jury to not recite essential structure of the claims, and instead, merely stated a purpose or intended use of the '725 asserted claims. See Expert Decl, at pp. 16-19, and Dkt. No. 58-1. Another claim element, "limitation or restriction on use of an account" of Independent Claim 102 is not found in the '725 asserted claims. The difference in meaning of the claim term, "limitation or restriction" was previously demonstrated *supra* at pp. 10-11. Here, the claim elements are substantially different based upon the context of the entire claim, which drastically alters the scope of what is being claimed by claim 102, versus claim 108 of the '725 Patent. A "limitation or restriction on the use of an account" as defined by the '003 Patent and its file history, and further understood in the context of the claims (and the law of claim differentiation), is not equivalent to the "limitation or restriction regarding a banking transaction" that prohibits a withdrawal on an account. *See* Expert Decl., at pp. 36- 50. The "limitations or restrictions" used in claim 102 of the '003 Patent is not identical to the "limitations or restrictions" of claim 108 of

the '725 Patent that prevent a transaction from occurring at all.  *See* Expert Decl., at pp. 80-96.

Other claim elements bring new, substantially different and patentably significant issues of validity not previously litigated, including the following examples:

| 1 | Authorization request, …processes an authorization request for a transaction | 102 |
|---|---|---|
| 2 | independently of any processing of the transaction by a central transaction processing computer | 317, 370 |
| 3 | the apparatus receives a third signal, wherein the third signal is transmitted from the communication device or from the second communication device, and further wherein the third signal contains information for authorizing or disallowing the transaction | 108 |
| 4 | the information regarding the banking transaction is transmitted to the communication device on or over at least one of the Internet and the World Wide Web | 414 |
| 5 | Electronic mail message | 34, 44 |
| 6 | the communication device is a wireless device. | 343, 416 |

Term No. 1 added claim elements that first appear in the '003 Asserted Claims.  Term No. 2 emphasizes the distinction of the invention operating separate from general transaction processing – a key, novel idea distinct from earlier issues litigated.  In the '003 Asserted Claims, the receiver performs added functionality associated with the element disclosed at Term No. 3. Term no. 4 involves use of the Internet for communication and transmitting signals between the transaction security apparatus and the individual's communication device was not part of the '725 patent litigation.  Stating that the '003 Asserted Claims simply add the internet to old steps in the prior art is an incorrect statement that misses the mark in construing the claims, and reading the claims as a whole to understand the invention(s).  Term no. 5 does not appear in the '725 asserted claims.  Term no. 6 introduces the adaptation of the transaction security apparatus to wireless devices.  This too, is a new claim element not previously litigated.

These terms are raised for the first time in this litigation.  These terms have precise meanings given to them by the patentees, and their meaning in the context of the entire claim as a whole, defines the scope of the claims.  *See* Phillips, 415F.3d 1303.  These additional claim

elements, each creates another set of new validity issues that were not previously litigated or addressed in the '725 patent litigation.  These and other additional claim elements that were not in the '725 asserted claims, demonstrates that the '003 Asserted Claims raise many new issues of validity, and further narrow the scope of these asserted claims.  In adding these claim elements to the dispute, new technology and fields of art are involved.  The prior court did not specifically consider the validity of these additional claim terms and claim elements.  These are new, patentably distinct limitations added to the '003 Asserted Claims.  As a result, the Plaintiff did not fully litigate these particular claim limitations in the '725 patent litigation.  These and other of the additional claim elements (set forth more fully in the Expert Decl. at pp. 36-246) narrow the scope of the '003 Asserted Claims.  These claims cannot now be rendered obvious or invalid by the earlier analysis in the '725 patent litigation.  *See* Senju Pharm. Co., Ltd,. 2012 WL 6090354, at *3.

Defendant's failure to address claim construction of the independent Asserted Claims in this action, is a fatal flaw in its argument.  Defendant's analysis simply equates claim terms of the '003 Asserted Claims to the '725 asserted claims.  This analysis ignores intrinsic evidence of the '003 Patent, and does not adhere to the law of claim construction.  Defendant argues facts without consideration to the proper legal guidance of the courts or the Patent Laws.  The meaning of the terms is different from that of the '725 asserted claims.  The overall invention of the '003 Asserted Claims is/are geared towards a substantially different invention(s) than that of the '725 asserted claims, as disclosed in the Abstracts for each.  Moreover, the '003 Asserted Claims include additional claim elements such as those set forth in the table *supra*, and further elaborated in Expert Decl. at pp. 36-246.  These new claim elements were not litigated in the previous '725 patent litigation, and they raise new issues of validity that are not substantially

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

identical to those that were litigated during that earlier '725 patent litigation.

These additional claim elements create substantive differences between these independent and dependent Asserted Claims of the '003 Patent.  It is a basic tenet of the Patent Laws that a narrower claim is not rendered invalid by the invalidity of a broader claim.  Senju Pharma., 2012 WL 6090354, at *3 (*quoting* 35 U.S.C. §282).  These '003 Asserted Claims, having different claim constructions, and additional claim elements, "lends to the patentable significance to the claimed combination, thereby altering the issues bearing on the obviousness determination."  Ohio Willow Wood Co. v. ALPS South, LLC, No. 2:04–cv–1223, 2012 WL 2196083, *10 (S.D. Ohio June 15, 2012) (quoting Medinol Ltd. v. Guidant Corp., 341 F.Supp.2d 301, 322 (S.D. N.Y. 2004).  Collateral estoppel does not apply under these circumstances.

## B. None Of The Prior Art Addresses The Internet Or The "Transaction Security Apparatus" For The Internet

None of the prior art or invalidity arguments in the '725 litigation used the Internet, or dealt with security of transactions occurring on or over the Internet.  This additional feature of the Asserted Claims was not litigated previously, nor was evidence presented, on this aspect of the invention of the Asserted Claims from the '003 Patent.  To say that the '003 Asserted Claims merely add the Internet to steps previously performed in those prior art disclosures is wholly false.  The '725 patent litigation addressed how the stop payment functionality was adapted to online or internet banking, and when and how the written stop payment request became "automatically" received, as that term is used in the '725 asserted claims.  *See*  SDNY Trial Transcr. of Mar. 5, 2010, at p. 464, ln. 18 – p. 468, ln. 10; SDNY Trial Transcr. of Mar. 1, 2010 at p. 28, ln. 17 – p. 29, ln. 24, p. 30, ln. 19 – p.31, ln. 5, attached hereto as Exhibit BB to the Expert Decl.  The claim elements of the '003 Asserted Claims are not directed to use of the stop payment service with Internet banking.

The '003 Asserted Claims provide for a new and patentably distinct invention that was not addressed in the '725 patent litigation and further, was disclosed in the prior art.  These claim elements are directed to a transaction security apparatus that safeguards an individual account holder's accounts by (1) giving the account holder access to his Internet-based account for managing controls over transactions performed on the account, and (2) providing direct notifications to the account holder in a prompt manner.  These aspects of the '003 Asserted Claims are further narrowed with the claim elements of the independent claims, which address safeguards for the mobile banking and mobile financial services – none of which was disclosed in the prior art.

Defendant's argument that the '003 Asserted Claims merely adds the internet to steps that were previously performed in the mechanical arts is not true.  The narrower scope of the '003 Asserted Claims discloses and claims an invention for a transaction security apparatus that resolves the insecurity fraught with the new use of the Internet in financial transaction processing, the ability of hackers, thieves and others to clone data, steal data, and intercept or listen in on Internet communications in order to obtain PIN numbers, access codes and similar older security features that, due to the manipulation of technology by thieves, no longer provided the security needed for Internet communications, let alone Internet financial transactions.  Expert Decl. at p. 16-19.  The claim elements of the Asserted Claims did not occur prior to the use of the Internet – because account holders were not set up to control or manage accounts online as claims in the '003 Asserted Claims.  These claims do not incorporate old steps adapted to the Internet.  Rather, the claimed combination, and each step, arose because of the Internet.  The claimed combination of the Asserted Claims provides a solution to the security concerns that arose in the adaptation of the banking to the Internet.

The invention and scope of the '003 Asserted Claims is not a "routine modification that are a part of adapting [the Internet] to an existing system." Soverain Software, LLC v. Newegg Inc., 705 F.3d 1333, 1343 (Fed. Cir. 2013).  As discussed, the scope of the '003 Asserted Claims sets forth and includes many new claim elements that bring into play new fields of technology, and patentably significant distinctions not in the '725 asserted claims, and therefore, the presence of these new claim elements raises a number of issue(s) that were not previously litigated. Defendant's summary overview in its argument that the '003 Asserted Claims merely adapt the '725 asserted claims step of "transmitting signals electronically [sic] using various means" to "transmitting signals over the Internet", misses the mark on understanding the claimed inventions.  Additionally, Defendant's argument for lack of evidentiary support for its position that the '003 Asserted Claims merely use "the Internet to operate prior art applications."  (D.I. 59 at p. 7).  See Rowe Int'l Corp. v. Ecast, Inc., 586 F.Supp.2d 924, 966-967 (N.D. Ill. 2008).

## C.  Plaintiff Did Not Have The Opportunity To Fully Litigate The Issues Relating To The Validity Of The '003 Asserted Claims

Plaintiff was specifically precluded from discussing the '003 Patent during the '725 Patent litigation.  During the previous trial Plaintiff attempted to bring into evidence the '003 Patent, but was prevented from doing so.  Evidence of successful licensing of the '003 Patent and the JBTS portfolio would have been offered to demonstrate commercial success, long-but-unmet need in the industry, and other Graham factors of non-obviousness.   The trial court in the earlier litigation did not allow evidence of specific Graham Factors to prove or disprove nonobviousness of the patented invention in issue in that case.  Plaintiff had commenced a successful licensing campaign in 2009, with enforcement efforts of the '003 Patented invention for the notifications and alerts used in the banking industry.  The early licenses constituted evidence of commercial success of the invention. The evidence of these licenses, as well as the

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

evidence as to the identity of the powerhouses that entered into the licenses, would have been evidence worth considering when the jury was weighing the invalidity questions in the jury form. The court, however, refused to allow this evidence at trial.  See Exhibit BB attached to the Expert Decl., SDNY Trial Transcr. of Mar. 2, 2010, at p. 133, ln. 20 – p. 138, ln. 18; Mar. 5, 2010, at p. 457, ln. 11 – p. 458, ln. 18; Mar. 1, 2010, p. 7, lns. 10-22;

Evidence material to the '003 asserted claims was not considered during the '725 patent litigation.  Collateral estoppel does not apply where the prosecution history of the patent-in-suit was not of record during the earlier proceeding.  <u>Golden Bridge Tech.</u>, 937 F.Supp.2d at 496 (*citing* <u>Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.</u>, No. 08-309-JJF-LPS, 2009 WL 4928029, at *16-17 (D. Del. Dec. 19, 2009) (additional citations omitted).  In <u>Golden Bridge Tech.</u>, the court found that collateral estoppel did not apply because not all the evidence was before the court during the earlier adjudication, even though it was too early to tell whether that additional information in the prosecution history would affect the outcome (and change the scope of the patent claims).  In the instant case, the prosecution history of the '003 Patent and the '003 Patent itself, were not before the earlier court, **and** this prosecution history explicitly changes the scope of the claims because it provides different definitions for the terms.  The prosecution history of the '003 Patent also contains many prior art references, including those references that were part of the litigation of the six claims of the '725 Patent.  *See* D.I. 1-1.  This new evidence creates new issues of patentability distinct from that of the claims from the '725 Patent. Collateral estoppel does not apply in these circumstances.  *See* <u>id</u>. ("the court cannot simply ignore new prosecution history that was not of record in the [earlier] litigation").

### D.  The Jury Verdict Form And The Judgment Leave Little To No Factual Evidence On Which To Rely Upon For Collateral Estoppel

The record of the '725 patent litigation, the special jury verdict form and the court's

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

judgment contain no analysis, and no factual explanation to support the outcome of that case. *See* Expert Decl. generally at pp. 20-246, and specifically at p. 16-19, and pp. 247-248; Dkt. Nos. 58-1, 58-2. Which prior art reference rendered the '725 asserted claims invalid? Which combination of the prior art references rendered these claims invalid? Which claim elements did the jury determine were the key to the invalidity determination. Other situations where a party has sought to apply collateral estoppel, the moving party has cited to specific evidence to prove their case.

Even Defendant's argument for the application of collateral estoppel is vague. Defendant concedes that there is no argument for anticipation to be applied to the '003 Asserted Claims. Notably, none of the references disclose, teach or suggest use of the Internet as described in the '003 Asserted Claims. The obviousness arguments fail because the specificity required to understand the previous judgment is missing. The judgment and the Special Verdict Form are conclusory and leave nothing for the parties or the court to understand the factual basis for the findings of the jury. While Plaintiff has demonstrated that there exists differences in the combinations as a whole, in the '003 Asserted Claims, there is nothing in the record before this Court upon which it can conduct a full comparison and analysis to determine whether a particular claim element was determined by the jury to be present, disclosed, or rendered obvious by the prior art references. Without this type of factual evidence to understand the rationale for the decision of invalidity, a court cannot conduct the analysis to determine whether the claims reveal a substantive difference. Westwood Chem., 525 F.2d at 1372[4] (*citing* Carter-Wallace,

---

[4] "[I]n determining the applicability of the estoppel, the first consideration is 'whether the issue of invalidity common to each action is substantially identical.' It is the issues litigated, not the specific claims around which the issues were framed, that is determinative. Only by focusing on the issues, and examining the substance of those issues, can the second court ascertain whether the patentee had the requisite full and fair chance to litigate the validity of his patent in the first suit. By the same token, only by using this approach can an attempt to relitigate the prior decision be revealed."

Inc., 496 F.2d 535 (1974)).

**E.  Defendant Is Bound To Its Earlier Position**

Jack Henry **_conceded_** that the claims asserted in this case are patentably distinct from the

claims that were asserted in the Prior Action.   Jack Henry made the following binding

representations to the court in the Prior Action:

> While the '003 patent may be a continuation of the '725, **_the claims of each_**
> **_patent must necessarily be different_** from the other to avoid double patenting.  …
>
> Thus, to avoid prosecution estoppel and double patenting, **_the continuation_**
> **_claims must necessarily be different_** from the claims present in the original ['725
> patent] application.
>
> See Exhibit A (SDNY Dkt. 167, page 2) (emphasis added). (*See also* Ritcheson Dec., Ex.
> C, D.I. 71).

Defendant should be bound by its prior representations. *See*, *e.g.*, U.S. Philips Corp. v. Sears

Roebuck & Co., 55 F.3d 592 (Fed. Cir. 1995) (party is estopped from taking an opposite

procedural position in a second case involving the same patent, after being successful with the

contrary position in an earlier case); *see also* MobileMedia Ideas, LLC v. Apple Inc., 907 F.

Supp. 2d 570, 623 (D. Del. 2012) ("The Federal Circuit has established that judicial estoppel is

appropriate 'when a party takes a later position that is inconsistent with a former position in the

same dispute, on which the party had been successful and had prevailed based on the former

position.'" (citation omitted)).   In this case, Defendant now argues that the '003 Asserted Claims

possess nothing substantially different or distinct from the '725 asserted claims.   This type of

contradictory argument should be stricken.

**F.  The Prosecution History Of The '003 Patent Requires A Different Analysis Of The As-**
**    Issued Claims And The Prior Art References**

The evidence from the file history of the '003 Patent contains key information to

understanding the '003 Asserted Claims, and proves that Jack Henry raises new patentability

issues that were not previously litigated.   The prior art that was considered and forms part of the

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY**
**JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

prosecution history also changes the validity analysis under which these '003 Asserted Claims should be considered. First and foremost, the prior art references used by Defendant in the '725 patent litigation in arguing invalidity of the asserted claims of the '725 Patent were before the USPTO during the examination of the '003 Asserted Claims. "When during the patent examination process the examiner has considered the issues and prior art now advanced to support invalidity, the burden of proving invalidity is particularly heavy." Hy-Ko Products Co. v. The Hillman Group, Inc., No. 5:08 CV 1961, 2012 WL 4434610, at *2 (N.D. Ohio Sep. 24, 2012) (citing Impax Labs., Inc. v. Aventis Pharms., Inc., 545 F.3d 1312, 1314 (Fed. Cir. 2008). Defendant does not conduct an analysis to meet its heavier burden to prove the '003 Asserted Claims would be invalid. The Defendant provides no evidence to support its argument and instead gives an unfounded excuse for a government agent to shirk his responsibility, an argument contrary to logic and the law. "The 'presumption of validity of an issued patent under 35 U.S.C. §282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing.'" Al–Site Corp. v. YSI Int'l, Inc., 174 F.3d 1308, 1323 (Fed.Cir.1999) (quoting Intervet Am., Inc. v. Kee–Yet Labs., Inc., 887 F.2d 1050, 1054 (Fed.Cir.1989)).

No other case in which collateral estoppel was applied had these types of case facts. No case discusses the fact that the prior art of record in the prior litigation was submitted to the examiner and was considered during prosecution of the newly asserted claims. Additionally, the patent-in-suit is different in each of the cases, and the '003 Patent was not previously litigated. See Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., No. 98–80–SLR, 2004 WL 2980734, *3 (D. Del. Dec. 17, 2004) (citing Kearns v. General Motors Corp., 94 F.3d 1553, 1556

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

(Fed. Cir. 1999)).[5]   Defendants do not prove facts exist for this court to apply collateral estoppel.

Defendant's comparison of the '003 Asserted Claims to the'725 asserted claims fails to consider that the prior art from the '725 patent litigation is afforded less weight because it was considered by the USPTO during prosecution of the '003 Asserted Claims.   Claim 30 is substantially different from Claim 108 ('725 patent) as the preamble in claim 30 is an additional claim element not part of Claim 108.   Expert Decl., p. 16-19, 36-40.   Claim 30 of the '003 Patent, in particular, is not substantially identical to claim 108 of the '725 patent for this and the other reasons set forth in the Expert Decl., at pp. 36-50.   Claim 102 ('003 Patent) is substantially different from the Claim 108 ('725 Patent) because its claim elements have different scope and pull in different fields of technology.   The claim element "limitation or restriction on a use of an account" is substantially different from the "limitation or restriction that prohibits a withdrawal" as discussed supra at pp. 11-14..   *See also* Expert Decl. at pp. 80-96   .   Claim 102 is directed towards an apparatus that manages the purchase of goods and services, a limitation which does not appear in the '725 asserted claims.   Id. at para. 60(a).

The issues of validity regarding the '725 Patent's six claims before the district court in JBTS v. Sleepy Hollow, et al., are patentably and materially different from that of the Asserted Claims in this action.   Defendant hardly addresses the dependent Asserted Claims in its argument.   Yet the scope of the Asserted Claims are sufficiently distinct from those claims of the '725 patent that were found invalid, and these distinctions rise to the level of patentably-distinct issues of material fact that were not previously litigated.

## VII.   CONCLUSION

For each of the reasons set forth above, Plaintiff respectfully submits that Defendant's

---

[5] "[I]t is not possible to show that the identical issue was presented in the sixteen patents that were not before the … court … for each patent, by law, covers a independent and distinct invention").

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

motion for summary judgment should be denied.

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

Dated: <u>February 25, 2014</u>

*Attorneys for Plaintiff*
*Joao Bock Transaction Systems, LLC*

*/s/ Stamatios Stamoulis*

**STAMOULIS & WEINBLATT LLC**     Stamatios Stamoulis #4606
                stamoulis@swdelaw.com
Richard C. Weinblatt #5080
                weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

**HENINGER GARRISON DAVIS, LLC**     Jonathan R. Miller, *Pro Hac Vice*
          Email: jmiller@hgdlawfirm.com
Jacqueline K. Burt, *Pro Hac Vice*
          Email: JBurt@hgdlawfirm.com
3621 Vinings Slope, Suite 4320
Atlanta, Georgia  30339
Telephone:  (404) 996-0863, 0861
Facsimile:  (205) 547-5506, 5502

Steven W. Ritcheson, *Pro Hac Vice*
          Email: switcheson@hgdlawfirm.com
9800 D Topanga Canyon Boulevard, #347
Chatsworth, California 91311
Telephone:  (818) 882-1030
Facsimile:  (205) 326-3332

M. Blair Clinton, *Pro Hac Vice*
          Email: bclinton@hgdlawfirm.com
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 327-9116
Facsimile:  (205) 380-8082

Maureen V. Abbey, *Pro Hac Vice*
          Email: maureen@hgdlawfirm.com
220 St. Paul Street
Westfield, NJ 07090
Telephone:  (908) 379-8475
Facsimile:  (205) 547-5500

**PLAINTIFF'S OPPOSITION TO DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON COLLATERAL ESTOPPEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2014, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.


*/s/ Stamatios Stamoulis*
Stamatios Stamoulis #4606