UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOAO BOCK TRANSACTION SYSTEMS,
LLC,
      Plaintiff,

      v.

JACK HENRY & ASSOCIATES, INC.,
      Defendant.

1:12-cv-01138-SLR

Judge Sue L. Robinson

## PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE

## Table Of Contents

I.    NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.   SUMMARY OF ARGUMENT ....................................................................... 2

III.  STATEMENT OF FACTS .............................................................................. 3

IV.   ARGUMENT ................................................................................................. 5

   A.   THE ASSERTED CLAIMS ARE NOT OBVIOUS ................................... 5

     1.   JBTS's Motion to Strike ................................................................... 5

     2.   JHA's Prior Art Combinations Lack More Than Just The Internet ..... 11

     3.   Adding Communications Over the Internet and World Wide Web is Not Obvious 14

     4.   Secondary Considerations ................................................................ 17

   B.   THE PATENT-IN-SUIT CONTAINS A WRITTEN DESCRIPTION OF THE ASSERTED CLAIMS ......................................................................... 19

     1.   The Written Description Requirement Does Not Require Disclosure of Algorithms 19

     2.   The Specification Discloses Algorithms ............................................ 21

     3.   JHA's Failure To Offer Expert Testimony On Written Description Is Fatal ........ 23

     4.   Mr. Joao's Qualifications Are Irrelevant .......................................... 24

   C.   THE ASSERTED CLAIMS ARE DIRECTED TO PATENT ELIGIBLE SUBJECT MATTER ...................................................................................... 25

     1.   JHA's Newly-Proposed "Abstract Ideas" Should Be Stricken ............... 25

     2.   The Asserted Claims Are Not Directed To JHA's Sixth Proposed "Abstract Idea" 27

     3.   Even if Directed To An Abstract Idea, The Asserted Claims Would Still Be Patentable ................................................................................. 30

     4.   The Machine-Or-Transformation Test Is Inapplicable ........................... 36

   D.   JHA's COLLATERAL ESTOPPEL ARGUMENT IS IMPROPER ......... 36

     1.   JHA's Affidavits on Collateral Estoppel Should be Stricken .................. 36

     2.   JHA's Collateral Estoppel Argument Is An Improper Motion For Reconsideration 38

V.    CONCLUSION ........................................................................................... 39

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

# TABLE OF AUTHORITIES

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013).. 34

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ........................................................................ 6

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. __, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) ........................................................................................................................................ 30, 34

*Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336 (Fed. Cir. 2011) ...................... 19, 20, 23

*Bilski v. Kappos*, 561 U.S. 593, ___, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010).......................... 29

*Burr v. Duryee*, 68 U.S. 531 1 Wall. 531, 17 L.Ed. 650 (1863)................................................... 30

*Capon v. Eshhar,* 418 F.3d 1349 (Fed. Cir. 2005)....................................................................... 22

*Card Verification Solutions, LLC v. Citigroup Inc.*, Case No. 1:13-cv-06339, 2014 WL 4922524 (N.D. Ill. Sep. 29, 2014).................................................................................................. 31, 34

Carnegie Mellon Univ. v. Hoffmann-La Roche Inc., 541 F.3d 1115 (Fed. Cir. 2008) ............... 20

*Daoud v. City of Wilmington*, 946 F.Supp.2d 369 (D. Del. 2013)................................................ 38

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)........................................................................... 29

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.,* 758 F.3d 1344 (Fed. Cir. 2014).................................................................................................................................... 30

*Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002)....................................... 20

Falko-Gunter Falkner v. Inglis, 448 F.3d 1357 (Fed. Cir. 2006)................................................. 20

*Fonar Corp. v. Gen. Elec. Co.,* 107 F.3d 1543 (Fed. Cir. 1997) ................................................. 21

*Fowle v. C&C Cola*, 868 F.2d 59 (3d Cir. 1989) .......................................................................... 5

*Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367 (Fed. Cir. 1986) ........................ 22

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063 (Fed. Cir. 2012) ................................................................................................................... 19

*In re Ferguson,* 558 F.3d 1359 (Fed. Cir. 2009).......................................................................... 30

*In re Hayes Microcomputer Products*, 982 F.2d 1527 (Fed. Cir. 1992)...................................... 21

*In re Nuijten,* 500 F.3d 1346 (2007) ............................................................................................ 30

*In re* Smith, 481 F.2d 910 (C.C.P.A. 1973) ................................................................................. 23

*Invista North America S.A.R.L. et al. v. M&G USA Corporation et al.*, 951 F.Supp.2d 626 (D. Del. 2013), reconsideration denied by, 2013 WL 3624014 (D. Del. July 12, 2013) ................. 6

*Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052 (Fed. Cir. 2005).................................. 20

*Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350 (3d Cir.1990) .................................................... 38

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005)................... 19

*Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669 (3d Cir.1999)................ 38

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) ....................................... 17

*Planet Bingo, LLC v. VKGS LLC*, 2014 WL 4195188 (Fed. Cir. 2014) ...................................... 32

*PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d 1299 (Fed. Cir. 2008).................................. 20

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

*SiRF Technology, Inc. v. International Trade Com'n*, 601 F.3d 1319(Fed. Cir. 2010) .............. 30

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006).............................. 9

*Soverain Software LLC v. Newegg Inc.,* 705 F.3d 1333 (Fed. Cir. 2013), <u>amended on rehearing by</u>, 728 F.3d 1332 (Fed. Cir. 2013), <u>cert. denied</u>, 134 S.Ct. 910, 187 L.Ed.2d 779 (2014)...... 16

Streck, Inc. v. Research & Diagnostic Sys., Inc., 665 F.3d 1269 (Fed. Cir. 2012) ............... 20, 23

Technology Licensing Corp. v. Videotek, Inc., 545 F.3d 1316 (Fed. Cir. 2008)......................... 24

*Telecordia Technologies, Inc. v. Cisco Systems, Inc.*, 612 F.3d 1365 (Fed. Cir. 2010) .............. 24

*Triton Tech of Texas, LLC v. Nintendo of America, Inc.,* 753 F.3d 1375 (Fed. Cir. 2014) .......... 21

*Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) ................................. 24

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991)................................................................. 9

*Western Union Co. v. MoneyGram Payment Systems*, 626 F.3d 1361 (Fed. Cir. 2010) .............. 17

## Statutes

35 U.S.C. § 101 ................................................................................................................... passim

35 U.S.C. § 103(a) ...................................................................................................................... 25

35 U.S.C. § 112, ¶ 6 .................................................................................................................... 24

35 U.S.C. § 112, ¶1 ............................................................................................................... 19, 24

## Rules

Fed. R. Civ. Proc. 59(e) ......................................................................................................... 38, 39

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

Plaintiff Joao Bock Transaction Systems, LLC (hereinafter, "JBTS" or "Plaintiff") files its Opposition to the Motion for Summary Judgment Of Invalidity filed by Defendant Jack Henry & Associates, Inc. (hereinafter, "JHA" or "Defendant").  D.I. 139.  JHA cannot prove any of the invalidity defenses set forth in its motion by clear and convincing evidence.  The Court should deny JHA's motion for summary judgment because: (1) the asserted claims are nonobvious; (2) the patent-in-suit contains a written description of the asserted claims, (3) the asserted claims are not directed to abstract ideas; and, (4) JHA's collateral estoppel argument has already been denied, and JHA cannot meet the standard for a motion for reconsideration.  In addition, JBTS moves to strike portions of JHA's motion and evidence in support thereof as improper evidence on summary judgment evidence, as incomplete or as untimely disclosed.

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff JBTS filed this patent infringement action against defendant JHA on September 14, 2012 alleging infringement of U.S. Patent Number 7,096,003 (the "'003 Patent"). Complaint, D.I. 1.  JHA's operative answer and counterclaims are found in its "Original Answer and First Amended Counterclaim" filed February 12, 2013. D.I. 32.   JHA served its final invalidity contentions on July 28, 2014, and then supplemented those contentions the next day, July 29, 2014. See JBTS-0001-0335, 0336-0419.  JHA served its invalidity expert reports on August 18 and 19, 2014.  See JBTS-0420-0539, 0558-0614.  Fact discovery concluded on May 9, 2014, and expert discovery concluded on September 22, 2014. D.I. 104; D.I. 129. The pretrial conference has been scheduled for December 17, 2014 and trial is scheduled for January 5, 2015. *Id*. Both

parties have recently filed Motions for Summary Judgment regarding infringement (D.I. 146, 149) and JBTS has also filed a Motion for Summary Judgment of No Invalidity (D.I. 142).

## II.    SUMMARY OF ARGUMENT

1.    JHA's § 103 argument fails because JHA has not presented even a *prima facie* case that any of the asserted claims are obvious. Even if it had, JHA's asserted combinations do not disclose all limitations of the claims, and its motion ignores the many secondary considerations of nonobviousness present in the record. On this record, JHA cannot prove by clear and convincing evidence that the asserted claims are obvious.

2.    JHA's written description argument fails because it presents no evidence – much less clear and convincing evidence – that persons skilled in the art would not recognize in the disclosure of the '003 Patent a description of the claimed inventions. Instead, JHA's argument incorrectly focuses on software code, which it is not necessary to disclose, and one of the inventor's qualifications, which are legally irrelevant. JHA's § 112 argument finds no support in either fact or law, and should be rejected.

3.    JHA makes a brand new § 101 argument, attempting for a sixth time to identify an "abstract idea" to which the asserted claims are purportedly directed. JHA's new argument should be stricken as untimely disclosed. Even if permitted to proceed on its new theory, the asserted claims are not directed to JHA's newly-proposed "abstract idea" as it fails to accurately describe the limitations of the claims. Further, even if they were directed to an abstract idea, the asserted claims are nevertheless appropriately limited and thus claim only patent-eligible subject matter. Finally, the asserted apparatus claims all easily pass the machine-or-transformation test.

### III.   STATEMENT OF FACTS

JBTS responds to JHA's statement of undisputed facts as follows:

**Disputed Facts**

1.   Mr. Fulton does not and cannot rely on any "embodiment" of his '052 patent "offered before 1996." D.I. 139 at 5. In fact, the relevant Huntington Bank Smart Phone project was never commercialized and never got past the prototype stage. (Fulton Depo., Sep. 2, 2014, 157:6-158:1).  See JBTS-2023-2034.

2.   JBTS disputes that Dr. Kursh has "showed that Jack Henry's pre-1996 Cash Management product was in use by others well before the priority date of the '003 Patent." D.I. 139 at 5. Instead, Dr. Kursh apparently intends to rely on unspecified future testimony of certain JHA witnesses and documents which have not yet been presented to the Court or to JBTS. See D.I. 140-1, Exhibit J.  JHA also relies on documents which have not been submitted to the Court and which appear to have a copyright date of 1997, well after the priority date of the '003 Patent. See D.I. 140-1, Exhibit J.

3.   JBTS disputes that Mr. Fulton's patented system "had all the structural features of the '003 claims … and performed almost all the functions claimed in the '003 claims." D.I. 139 at 5.

4.   The Fulton patent does not disclose the limitation or restriction of claims 30, 102 and their dependent claims. (D.I. 143 at 30-32; Cheng Decl. at ¶¶ 10-13, ¶¶ 14-14). See JBTS-2624-2648.

5.   Mr. Fulton's patented system did not send or receive electronic mail messages. (Fulton Depo., Sep., 2, 2014 at 212:1-4; Cheng Decl. at ¶ 17). See JBTS-2624-2648.

6.   The Fulton patent does not disclose the "network computer" of claim 414 and its dependents. (Cheng Decl. at ¶ 20). See JBTS-2624-2648.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

7.  JHA concedes that the Fulton patent also does not disclose the Internet transactions of claim 324, or the wireless communications device of claims 343 and 416. D.I. 139 at 5-6.

8.  JBTS disputes that the old Cash Management system "had all the physical structures recited in the '003 claims and performed virtually all of the claimed functions." D.I. 139 at 5.

9.  In fact, the old Cash Management system lacked the limitation or restriction of claims 30, 102 and their dependent claims. See D.I. 143 at 31-32 (citing Calman Depo, Sep. 16, 2014 Tr. at 170:22-24; 191:7-14). See JBTS-2018-2022.

10. The Cash Management system relied on by JHA had no bill payment functionality. (Donald Smith, *Sleepy Hollow[1]* Tr. Mar. 9, 2010 at 1010:3-10). See JBTS-2001-2007.

11. Old Cash Management lacked the ability to perform interbank transfers. (Joe Nicholas Depo, May 2, 2014 Tr. at 92:10-93:6). See JBTS-2051-2060.

12. Old Cash Management allowed intrabank transfers, but even these could not be scheduled for the future or set to recur. (Joe Nicholas Depo, Mar. 6, 2014 Tr. at 164:10-21).  See JBTS-2042-2050.

13. The purportedly prior art Cash Management system could not make tax payments. (*Id.*, 172:22-173:2). See JBTS-2042-2050.

14. The old Cash Management system lacked the ability to send alerts to a user. (Donald Smith, *Sleepy Hollow* Tr. Mar. 9, 2010 at 1010:11-19)("Q. No alerts at all? A. No.") (see JBTS-2001-2007); see also *id.* at 1012:9-18 (no sign-on alerts); see also (Joe Nicholas Depo, May 2, 2014 Tr. at 102:2-103:5) (see JBTS-2051-2060).

15. Old Cash Management lacked the ability to send electronic mail messages. (Donald Smith, *Sleepy Hollow* Tr. Mar. 9, 2010 at 1012:19-22). See JBTS-2001-2007.

_____

[1] *Joao Bock Transactions Systems, LLC v. Sleepy Hollow Bank*, Case No. 03 CV. 10199 (S.D. N.Y.)

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

16. Old Cash Management did not support the 'web' transaction type. (Joe Nicholas Depo, May 2, 2014 Tr. at 98:20-99:6; 100:1-14). See JBTS-2051-2060.

17. The pre-1996 version of Cash Management did not include multi-factor authentication. (*Id.* at 99:7-15).

18. Old Cash Management could not be used in a mobile environment. (*Id.* at 105:22-106:1).

19. Old Cash Management could not be used in a wireless environment. (*Id.* at 106:19-20).

JHA does not appear to offer any separately identified "undisputed" facts concerning its § 101 patent eligible subject matter or its § 112 written description argument.  JHA offers certain additional facts in opposition to JHA's motion as set forth below.

## IV.   ARGUMENT

## A.   THE ASSERTED CLAIMS ARE NOT OBVIOUS

### 1.   JBTS's Motion to Strike

For the Court's convenience, JBTS is including in the present brief its arguments in support of JBTS's concurrently-filed motion to strike. JBTS's Motion outlines the precise relief it seeks, and the precise arguments and evidence which should be stricken. The arguments as to why this evidence should be stricken are set forth here.

#### *a.   JHA's Unsworn Expert Reports Should Be Stricken*

JHA has not submitted any admissible evidence in support of its obviousness argument. Instead, JHA has submitted only unsworn expert reports, which are not competent evidence on a motion for summary judgment. D.I. 140-1 (Kursh Report), 140-18 (Fulton Report); see *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)(noting that an unsworn expert report is not competent evidence on a motion for summary

judgment). JHA's unsworn expert reports should be stricken as they are not competent evidence under Rule 56.

In the past, this Court has allowed a party to correct a similar error by later submitting a short affidavit from the expert. *Invista North America S.A.R.L. et al. v. M&G USA Corporation et al.*, 951 F.Supp.2d 626, 641 fn. 6 (D. Del. 2013), <u>reconsideration denied by,</u> 2013 WL 3624014 (D. Del. July 12, 2013). Here, even if such an affidavit were submitted, JHA's expert reports should still be stricken as incomplete since they cite to and rely on evidence which itself has not been submitted into the summary judgment record. For example, JHA has failed to submit the evidence on which Dr. Kursh purportedly relies to demonstrate the operation of the Cash Management system, even though Cash Management is the primary reference for one of JHA's obviousness arguments. In his chart applying Cash Management to the asserted claims, Dr. Kursh cites to the unspecified future testimony of Joseph Nicholas, Jon Henley and Don Smith concerning Cash Management for every claim limitation. <u>See</u> D.I. 140-1, Exhibit J. In many cases, this unspecified future testimony is the *only* evidence Dr. Kursh cites in support of his opinions of how Cash Management worked. <u>See, e.g.,</u> *id.* at limitation 30(c); 30(i); 30(k); 102(c); 102(j); 122(b); 414(g). None of this testimony has been submitted to the Court on summary judgment, thereby preventing the Court from evaluating it and preventing JBTS from rebutting it. In the same chart, Dr. Kursh also relies on certain "legacy Cash Management documentation" (limitations 30(f)-(h), 30(j), 30(l), 31(b), 34(b)-(d), 102(d)-(f), 102(h)-(i), 102(k), 106(b)-(d), 317(b)-(i), 324, 414(b)-(f), 414(h), 414(k), 414(m), 422(b), 422(d)), but this documentation has been omitted from the summary judgment record.[2] JHA cannot even present

---

[2] Further, assuming JBTS has identified the correct documents, the "legacy Cash Management documentation" on which Dr. Kursh relies bears a copyright date of 1997. The priority date of the '003 patent is at least August 8, 1996. JHA has submitted no evidence into the summary

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

a *prima facie* case that the asserted claims are obvious over JHA's Cash Management system when most of the evidence describing the Cash Management system has never been presented to the Court.

Dr. Kursh relies in his chart on several other pieces of evidence which are not before the Court. He relies on unspecified prior trial testimony concerning the Westar Bank Remote Banking product (limitations 30(b), 102(b), 317(b) and 414(b)). D.I. 140-1 at App. J. This testimony has not been presented to the Court, or even identified with enough specificity for JBTS to locate it.  Dr. Kursh relies on Mr. Henley's May 5, 2014 deposition testimony and Exhibit 6 thereto (limitations 30(b), 30(e), 30(m), 102(b), 102(g), 414(f)). D.I. 140-1 at App. J. This, too, has been entirely omitted from the summary judgment record. Dr. Kursh's chart even includes references that are explicitly necessary for his obviousness combinations, but which are not present in the summary judgment record. For example, for asserted claim 34, Dr. Kursh combines the Cash Management system with the Blonder patent, but the Blonder patent has not been submitted to the Court. D.I. 140-1 at App. J.  For asserted claim 343, Dr. Kursh combines Cash Management with a Byte.com article by Rex Baldazo, but that article has not been offered into the summary judgment record. D.I. 140-1 at App. J. For claim 414, Dr. Kursh relies on purportedly prior art Citrix systems, but no evidence of such systems has been submitted on summary judgment. D.I. 140-1 at App. J.

Mr. Fulton's unsworn expert report is similarly incomplete. Even Appendix A to Mr. Fulton's own patent has been omitted from the summary judgment record, despite the fact that Mr. Fulton expressly relies on this Appendix as disclosing certain limitations of claim 30. D.I. 140-18 at p. 10. Mr. Fulton's report relies on "the CCITT Recommendation X.25 Orange Book

---

judgment record to establish that these documents are actually prior art, or that they describe a prior art system.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

in 1976," but this reference has not been submitted to the Court. D.I. 140-18 at 6-7, 12, 17, 28. Mr. Fulton's report also relies on "the Internet Engineering Task Force ("IETF") Request for Comment ("RFC") 791 Internet Protocol ("IP") from 1981." D.I. 140-18 at 7, 12, 17, 28. This reference, too, has been omitted from the summary judgment record.  For claim 34, Mr. Fulton combines his patent with the Blonder patent and the Lawlor patent. D.I. 140-18 at 14-15.  As previously noted Blonder is not in the summary judgment record. Neither is Lawlor, even though Mr. Fulton also relies on Lawlor to argue that claim 414 is obvious. D.I. 140-18 at 27. Short corrective affidavits from JHA' experts cannot fix these glaring omissions.

JHA should also not be permitted to submit short corrective affidavits or declarations because doing so would cause substantial prejudice to JBTS. The problem arises because JHA has not made clear, either in its brief or elsewhere, on which portions of these lengthy expert reports it relies for the present summary judgment motion. JHA's experts should have submitted affidavits or declarations addressing only the issues relevant to JHA's summary judgment motion. Alternatively, JHA could have identified in its briefing the portions of the expert reports on which it relied.  JBTS would then know exactly what factual contentions it needed to rebut in order to overcome summary judgment. JHA's failure to submit such affidavits has left JBTS at a loss as to what portions of these lengthy expert reports JBTS must rebut on summary judgment. For example, Dr. Kursh's report contains a lengthy discussion entitled "Summary History of Financial Industry Technology and Security With Respect to the '003 Patent." D.I. 140-1 at 31-47. This discussion may or may not be relevant to JHA's obviousness argument. Must JBTS rebut every factual misstatement in this discussion? Dr. Kursh also has a section of his report directed to 35 U.S.C. § 101, D.I. 140-1 at 29-30. Therein, Dr. Kursh identifies a very different "abstract idea" than that presented in JHA's motion for summary judgment. Id. at 30. Is JHA

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

relying on this portion of Dr. Kursh's report? Must JHA rebut this testimony to survive summary judgment? Mr. Fulton's report also contains a "Background" section which may or may not be relevant to JHA's present motion. Mr. Fulton's report asserts that claim 30 is obvious over his Fulton patent alone. D.I. 140-18 at 7. This argument is nowhere in JHA's brief, but is it part of the summary judgment record? Must JBTS rebut Mr. Fulton's opinions concerning enablement (which are incorrectly labelled as opinions concerning written description)? D.I. 140-18 at 31-34. On the present record, JBTS cannot know. "Judges are not like pigs, hunting for truffles buried in briefs." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006)(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). JHA should not be permitted to bury the evidence on which it relies for summary judgment like truffles hidden amongst hundreds of potentially relevant pages of unsworn expert reports.

### b.  JHA's New Arguments And New References Should Be Stricken

JHA's Motion also presents a new obviousness argument that was never previously presented. Specifically, JHA appears to argue for the first time in its motion that certain features of the Stanford Federal Credit Union ("SFCU") system can serve as the "limitation or restriction" of asserted claims 30, 102 and their dependent claims. D.I. 139 at 6-7, 28. Neither JHA nor its experts have ever previously disclosed this theory. On the contrary, Dr. Kursh previously opined that the Cash Management system combined with certain "Internet Banking Publications" renders the asserted claims obvious. Mr. Fulton opined that his patent combined with the same "Internet Banking Publications" renders the claims obvious.  Neither expert, however, has ever offered the opinion that anything could be combined with the SFCU system, much less that any feature of the SFCU system can serve as the claimed limitation or restriction. To be clear, one of the "Internet Banking Publications" relied on by JHA's experts does discuss

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

the SFCU system at a high level. D.I. 140-6. Other articles in this group of "Internet Banking Publications" describe numerous other systems. *Id.* JHA's experts chose to rely on the *publications* for their obviousness combinations, and did not rely on the numerous *systems* described in those publications. The experts are thus limited to the disclosures contained in the publications on which they relied, and should not now be permitted to supplement these publications with deposition testimony and other evidence regarding the systems discussed therein. Notably, neither Dr. Kursh nor Mr. Fulton made any reference in their expert reports to Mr. Tuohey or his deposition testimony. JHA cannot now introduce Mr. Tuohey's testimony to alter its obviousness argument on summary judgment, particularly when JHA's persons of skill in the art failed to do so in their expert reports. Both the new argument and the newly-cited Tuohey testimony should be stricken from the record.

Further, if JHA's unsworn expert reports are somehow admitted into the summary judgment record, certain references contained therein should be stricken as new. For example, Mr. Fulton's report references "the CCITT Recommendation X.25 Orange Book in 1976." D.I. 140-18 at 6-7, 12, 17, 28. This reference was not previously disclosed in JHA's invalidity contentions, and appeared for the first time in Mr. Fulton's report. Mr. Fulton's report also relies on "the Internet Engineering Task Force ("IETF") Request for Comment ("RFC") 791 Internet Protocol ("IP") from 1981." D.I. 140-18 at 7, 12, 17, 28. This reference also appeared for the first time in Mr. Fulton's report. Dr. Kursh's report contains brand new references, including a previously undisclosed Byte.com article by Rex Baldazo (D.I. 140-1, App. J at claim 414) and a previously undisclosed reference to Citrix software (*Id.*). Even if JHA's unsworn expert reports are somehow converted into competent summary judgment evidence, all of these new references should nevertheless be stricken as new.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

### 2. JHA's Prior Art Combinations Lack More Than Just The Internet

JHA argues that "[t]he only things in the asserted claims missing from Cash Management and Fulton were using the Internet for transmission." D.I. 139 at 5-6. This is simply incorrect. In fact, the purportedly prior art Cash Management system did not have the "limitation or restriction" of at least claims 30, 102 and their dependent claims. As explained in JBTS's brief in support of its Motion for Partial Summary Judgment of No Invalidity, JHA and its experts have identified the "stop payment instruction" of Cash Management as the only restriction or limitation of that system. See D.I. 143 at 32-33 (citing JHA's Final Invalidity Contentions, Ex. H at 2 (JBTS-0257) and Dr. Kursh's Report, App. J at 2 (JBTS-0519 - 0520)). Of course, JHA's own infringement expert has testified that a stop payment instruction cannot serve as the claimed limitation or restriction. See D.I. 143 at 31-32 (citing Calman Depo, Sep. 16, 2014 Tr. at 170:22-24; 191:7-14) (see JBTS-2018-2022). JBTS has moved for summary judgment on this issue because no reasonable jury could find by clear and convincing evidence that Cash Management satisfied the limitation or restriction of claims 30, 102 and their dependents where JHA's own expert concedes that it did not. D.I. 143 at 27-34. Even if JBTS's motion is not granted, Mr. Calman's testimony at least raises a disputed question of fact preventing a grant of summary judgment on JHA's motion.

The purportedly prior art Cash Management system also lacked other important limitations of the claims. The Cash Management system relied on by JHA had no bill payment functionality. (Donald Smith, *Sleepy Hollow* Tr. Mar. 9, 2010 at 1010:3-10; see JBTS-2001-2007.), which is the primary accused functionality of the present-day NetTeller Cash Management system. Old Cash Management lacked the ability to perform interbank transfers, i.e., transferring funds to an account at a different financial institution, because of security risks.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

(Joe Nicholas Depo, May 2, 2014 Tr. at 92:10-93:6; see JBTS-2051-2060.) It allowed intrabank transfers, but even these could not be scheduled for the future or set to recur as in the accused functionality of the present-day system. (Joe Nicholas Depo, Mar. 6, 2014 Tr. at 164:10-21; see JBTS-2042-2050.)   The purportedly prior art Cash Management system could not make tax payments. (*Id*., 172:22-173:2) Unlike the present-day system, the old Cash Management system lacked the ability to send alerts to a user, which are required for claims 31, 106, 317 and its dependents, and 414 and its dependents. (Donald Smith, *Sleepy Hollow* Tr. Mar. 9, 2010 at 1010:11-19; see JBTS-2001-2007) ("Q. No alerts at all? A. No."); see also *id*. at 1012:9-18; see also (Joe Nicholas Depo, May 2, 2014 Tr. at 102:2-103:5; see JBTS-2051-2060). It lacked the ability to send electronic mail messages as required by claim 34. (Donald Smith, *Sleepy Hollow* Tr. Mar. 9, 2010 at 1012:19-22; see JBTS-2001-2007.) The 'web' transaction type which exists in the present-day version of NetTeller Cash Management did not exist in the pre-1996 version of Cash Management, so it did not process "Internet transactions" as required by claim 324. (Joe Nicholas Depo, May 2, 2014 Tr. at 98:20-99:6; 100:1-14; see JBTS-20051-2060.) Importantly, the pre-1996 version of Cash Management did not include multi-factor authentication, which is important to every asserted claim. (*Id*. at 99:7-15). The original Cash Management could not be used in a mobile environment, as that functionality was not added until around 2010. (*Id*. at 105:22-106:1.) Nor could it be used in a wireless environment, as required by asserted claims 343 and 416. (*Id*. at 106:19-20). JHA does not even argue that these missing limitations are found in the "Internet Banking Publications," so their absence from Cash Management is fatal to JHA's obviousness argument.

Mr. Fulton's patent also lacked important claim limitations beyond just communications over the Internet or World Wide Web. First and foremost, the Fulton patent does not disclose the

limitation or restriction of claims 30, 102 and their dependent claims. Mr. Fulton's report identifies two features which he argues disclose the claimed limitation or restriction: "the Stop Payment transaction" and "the Fulton PIN." D.I. 140-18 at 8 (Claim 30); at 16 (Claim 102). Again, as noted in JBTS's Motion for Partial Summary Judgment of No Invalidity, JHA's expert Mr. Calman contends that neither PINs nor stop payment transactions can serve as the limitation or restriction of claims 30, 102 and their dependent claims. D.I. 143 at 30-32. JBTS's expert, Mr. Cheng, has also explained why the stop payment of Fulton cannot serve as the claimed limitation or restriction (Cheng Decl. at ¶¶ 10-13; see JBTS-2624-2648), and why the Fulton PIN also cannot serve as the claimed limitation or restriction. (*Id.* at Cheng Decl. ¶¶ 14-16; see JBTS-2624-2648). Again, even if JBTS's motion for summary judgment is not granted, Mr. Calman's testimony and Mr. Cheng's testimony at least create a material dispute of fact preventing the Court from entering summary judgment that the Fulton patent renders the asserted claims obvious.

Mr. Fulton's patent lacks other limitations of the asserted claims as well. Mr. Fulton's patented system did not send or receive electronic mail messages as recited in claim 34. (Fulton Depo., Sep., 2, 2014 at 212:1-4; see JBTS-2023-2034; Cheng Decl.at ¶ 7; see JBTS-2624-2648.) Nor does the Fulton patent disclose the "network computer" of claim 414 and its dependents. (Cheng Decl.at ¶ 20; see JBTS-2624-2648.) Mr. Fulton's report relies on Lawlor for the network computer, but Lawlor is not part of the obviousness combination JHA argues on for summary judgment. (D.I. 140-18 at 15). JHA concedes that the Fulton patent also does not disclose the Internet transactions of claim 324, or the wireless communications device of claims 343 and 416. JHA does not even argue these elements can be found in the "Internet Banking Publications," meaning their absence is fatal to JHA's obviousness arguments.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

### 3. Adding Communications Over the Internet and World Wide Web is Not Obvious

Substituting the internet in place of the direct-dial system of Cash Management or the x.25 network of Mr. Fulton's patent was far from obvious. Here, the record demonstrates that the old Cash Management system was a direct-dial system, involving a dial-up connection directly from a user's computer to the bank computer. (Donald Smith, *Sleepy Hollow* Tr. Mar. 9, 2010 at 1011:6-18; see JBTS-2001-2007.) JHA's Brief accurately describes it as "using a personal computer connected to a bank's host computer using a modem-to-modem phone line." D.I. 139 at 5. There is thus no communications network at all in the old Cash Management system. JHA offers no explanation of how the "Internet Banking Publications" would enable a person of skill in the art to modify such a direct-dial system to operate over the Internet.

It would also have been difficult for a person of skill in the art to modify Mr. Fulton's system to operate on the Internet. This is at least because the "communications device" of Mr. Fulton's system, the AT&T SmartPhone 2100, was not capable of accessing the internet and in fact lacked the processing power necessary to operate on the internet. (Fulton Depo., Sep. 2, 2014 at 128:7-129:1; see JBTS-2023-2034; Cheng Decl. at ¶ 18; see JBTS-2624-2648.) Mr. Fulton's system could not simply be plugged into the Internet as the alleged "communications device" would have to be entirely redesigned to do so. Nor could the Internet Protocol (IP) simply be substituted in place of the x.25 communications network as Mr. Fulton's report suggests. This substitution omits the transport layers necessary for sending data over the Internet or World Wide Web and simply would not work. (Cheng Decl. at ¶ 19; see JBTS-2624-2648.) Mr. Fulton testified at his deposition that he had never tried to move an x.25 system onto the Internet, and he did not know whether a person of ordinary skill would have been capable of such an integration in 1996. (Fulton Depo., Sep. 2, 2014 at 174:16-175:4; 267:19-23; see JBTS-

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

2023-2034.) Mr. Fulton even testified that he was not aware of any circumstance where the Internet replaced an x.25 protocol network. (*Id.* at 236:9-16; *see* JBTS-2023-2034.) JHA does not even acknowledge these obstacles to modifying Mr. Fulton's patent to operate on the Internet, much less explain how a handful of newspaper and magazine articles would enable a person of skill in the art in 1996 to overcome them.

Nor does JHA offer any reason why a person of skill would want to modify these systems. Direct-dial systems of this type do not invoke the same security concerns as communications over the Internet or World Wide Web. (Joe Nicholas Depo, Mar. 6, 2014 at 159:11-160:3; *see* JBTS-2042-2050.) Mr. Nicholas testified that dial-up systems existed in a time "before we were concerned about security." (Joe Nicholas Depo. May 2, 2014 at 32:3-34:22; *see* JBTS2051-2060.) Accordingly, "just a user ID and password" were considered adequate security measures for dial-up systems. (Joe Nicholas Depo., Mar. 6, 2014 at 32:3-11; *see* JBTS-2042-2050.) Similarly, the x.25 communications protocol disclosed in Mr. Fulton's patent was a virtual circuit, point-to-point network with substantially fewer security concerns than Internet communications. (Fulton Depo., Sep. 2, 2014 at 176:10-21; *see* JBTS-2023-2034.) Mr. Fulton testified that there were no technical problems with x.25, that it was "a perfectly fine protocol." (*Id*. at 167:16-25; *see* JBTS-2023-2034.) In light of this evidence, it is not clear why a person of skill in the art in 1996 would have been motivated to modify either Cash Management or the Fulton system to operate over the Internet or World Wide Web to create the transaction security apparatuses of the asserted claims.

Instead of addressing this evidence, JHA summarily argues that "the use of the internet in 1996 was obvious as a matter of law." D.I. 139 at 25. This is simply not correct. The Federal Circuit has never held that the use of the Internet was obvious, as a matter of law, in 1996, in all

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

contexts and for all purposes. The holdings on which JHA relies are actually for narrower. For example, in *Soverain* the Court held that "a person of ordinary skill could have adapted the CompuServe order command to known browser capabilities when these capabilities became commonplace." *Soverain Software LLC v. Newegg Inc.,* 705 F.3d 1333, 1340 (Fed. Cir. 2013), amended on rehearing by, 728 F.3d 1332 (Fed. Cir. 2013), cert. denied, 134 S.Ct. 910, 187 L.Ed.2d 779 (2014).This is a very specific holding, and the same is not true for either Cash Management or Mr. Fulton's patented system. In fact, Mr. Fulton's patented system was never deployed at all, was never adapted to operate on the Internet, and by 1996 the project had been abandoned. (Fulton Depo., Sep. 2, 2014 at 157:6-158:1; 161:3-13; see JBTS-2023-2034.) Jack Henry was not even trying to modify Cash Management to operate over the internet, instead working throughout 1996 on the direct-dial, modem-to-modem version of Cash Management. (Cheng Decl. at ¶ 21; see JBTS-2624-2648.) JHA claims it "had been working since 1995 to develop an Internet-based banking system" (D.I. 139 at 22, fn. 27). Importantly, though, Jack Henry was *not* using Cash Management in those efforts. Mr. Henley testified that the high-level planning for a Jack Henry online banking solution didn't even begin until March 1997. (Henley Depo., May 15, 2014, 153:12-25; 154:10-156:25; See JBTS-2035-2039.)  Henley Exhibit 9; see JBTS-2040-2041.) Mr. Nicholas testified that he was hired in May 1997 to begin the development of Jack Henry's online banking solution. (Nicholas Depo., Mar. 6, 2014, 30:1-17; see JBTS-2042-2050.) He did not start integrating Cash Management functionality into an online banking system until later that year. *Id.*, 26:25-27:15.  These facts are better evidence of the difficulty of adapting Cash Management to Internet communications than Dr. Kursh's hindsight analysis more than 18 years later. Indeed, for old Cash Management, there was no network at all, rendering *Soverain*'s holding regarding substituting the internet for another network entirely

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

inapposite. Moreover, *Soverain* cites to *Western Union Co. v. MoneyGram Payment Systems*, 626 F.3d 1361 (Fed. Cir. 2010), but the patents in that case had a priority date of October 26, 1999, years after the priority date of the '003 Patent. *Id*. at 1364. Similarly, the patent in the *Muniauction* case was filed May 29, 1998. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1326 (Fed. Cir. 2008). There, the Court also engaged in an extensive survey of prior art before concluding that "the use of the internet and web browser technology to conduct electronic auctions was well-established at the time the '099 patent application was filed." *Id*. Again, this is a very specific holding based on an extensive factual record developed at trial. The same cannot be said here. JHA argues otherwise, but its Brief quoting *Muniauction* omits an important part of the quote – "The record in this case demonstrates …" The Federal Circuit has never said that the use of "modern Internet and web browser technology" is obvious as a matter of law in all contexts at all times. JHA has done nothing to show that "the record in this case demonstrates" that it would have been obvious for a person of skill in the art to modify the old Cash Management system, or Mr. Fulton's patented system, to communicate over the Internet.

### 4. Secondary Considerations

Even if JHA's asserted prior art combinations did disclose all limitations of the asserted claims, and even if these combinations were technologically feasible by persons skilled in the art in 1996, summary judgment of obviousness should still be denied. This is at least because JBTS has identified numerous secondary considerations of nonobviousness that JHA has not even attempted to rebut. For example, prior failures of others demonstrate the nonobviousness of the inventions. JHA claims that it began working on an internet-based banking solution in 1995 (D.I. 139 at 27, fn. 22), began working to make Cash Management functionality available on the Internet in 1997 (Henley Depo., May 15, 2014, 153:12-25; 154:10-156:25; See JBTS-2035-

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

2039.) Henley Exhibit 9; see JBTS-2040-2041; Nicholas Depo., Mar. 6, 2014, 30:1-17; see JBTS-2042-2050), but failed to launch the actual product until Fall 1998. (Nicholas Depo., May 2, 2014, 90:15-91:13; see JBTS-2051-2060; see also D.I. 139 at 4-5, fn. 6 (conceding that NetTeller Cash Management was "developed by Jack Henry in 1998 and thereafter.")). Mr. Fulton's patented system was an even bigger failure, never getting out of the prototype stage. (Fulton Depo., Sep. 2, 2014, 157:6-158:1; see JBTS-2023-2034.) Another secondary consideration supporting nonobviousness is skepticism of others. Here, for example, Morgan Stanley published "The Internet Report" in 1996, which identified several risks that might "crush the internet." (Cheng Decl. at ¶ 20-24; see JBTS 2624-2648., Morgan Stanley "Internet Report"; see JBTS-2069-2390.) The Lawlor patent, relied on by JHA's experts, contains several columns of text explaining why Internet-based banking was a failure, and argued that the financial industry needed to look for an alternative manner of conducting remote banking. (Cheng Decl. at ¶ 24-25; see JBTS-2624-2648; Lawlor excerpt; see JBTS-2649-2650). Several witnesses in this case have testified that user IDs and passwords were sufficient security in priority art banking systems, undermining the motivation to implement JBTS's layered security approach. (Cheng Decl. at ¶¶ 26-30; see JBTS-2624-2648; Tuohey Depo, 78:1-7; see JBTS-2065-2068; Nicholas Depo, May 2, 2014, 32:3-34:22; see JBTS-2051-2060) Even government banking regulators did not catch up to the layered security approach of JBTS's asserted claims until many years later. (Cheng Decl. at ¶¶ 31-33; see JBTS-2624-2648; E-Banking IT Examination Handbook from FFIEC, see JBTS-2622-2623; August 2003; JHA-DE-00035306-000001-12; FFIEC Supplement to *Authentication in an Internet Banking Environment*; see JBTS-2609-2621; Financial Institution Letter from FDIC, FIL50-2011, © June 29, 2011; see JBTS-2608; FFIEC's Information Security IT Examination Handbook, © July 2006; see JBTS-2405-2532; Payment

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

Card Industry (PCI) Data Security Standard: Requirements and Security Assessment Procedures, Version 2.0 © Oct. 2010; see JBTS-2533-2607.) These facts demonstrate that JBTS's inventions were ahead of their time.  Finally, JBTS's patented inventions have been extensively licensed, demonstrating the commercial success of the inventions. (Cheng Decl. at ¶¶ 34-40; see JBTS-2624-2648.)  JHA's motion does not address any of these secondary considerations, even though the Federal Circuit has held that failure to consider secondary considerations is reversible error. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075 (Fed. Cir. 2012)(reversing district court for reaching conclusion of obviousness before considering objective indicia of nonobviousness). JHA's Motion on obviousness can and should be denied for this reason alone.

**B.  THE PATENT-IN-SUIT CONTAINS A WRITTEN DESCRIPTION OF THE ASSERTED CLAIMS**

**1.  The Written Description Requirement Does Not Require Disclosure of Algorithms**

JHA's Motion misstates the law of written description.  It is correct that a patent must contain a written description of the invention. 35 U.S.C. § 112, ¶1. The written description requirement is separate and distinct from the enablement requirement. See *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2011). It ensures that "the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-1345 (Fed. Cir. 2005). The Federal Circuit has stated that the relevant inquiry- "possession as shown in the disclosure"- is an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

invented the invention claimed." *Ariad*, 598 F. 3d at 1351. This inquiry is a question of fact: "the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id*. (citation omitted). JHA ultimately must provide clear and convincing evidence that persons skilled in the art would not recognize in the disclosure of the '003 Patent a description of the claimed invention. See *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) (citing *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072-1073 (Fed. Cir. 2005)).

"[T]he hallmark of written description is disclosure." *Ariad*, 598 F.3d at 1351. A disclosure satisfies the written description requirement when it "allow[s] one skilled in the art to visualize or recognize the identity of the subject matter purportedly described." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002). The written description does not necessarily require examples. *Ariad*, 598 F.3d at 1352. It does not necessarily require actual reduction to practice. *Id.*; *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012). Written description compliance does not require any recitation of known structure. *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1367 (Fed. Cir. 2006). Nor does it require any particular form of disclosure. *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008).

Here, JHA argues that the asserted claims of the '003 Patent are invalid because the specification does not contain "an algorithm or software" for certain functions of the claimed processing device. D.I. 139 at p. 34; see also *id*. at 35 (the "specification lacks any teaching of a sufficient algorithm or software code to meet the written description requirement …"). The Federal Circuit has repeatedly rejected this argument, specifically holding that the written

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

description requirement does not require the disclosure of algorithms or software code. <u>See, e.g.</u>, *Fonar Corp. v. Gen. Elec. Co.,* 107 F.3d 1543, 1549 (Fed. Cir. 1997); *In re Hayes Microcomputer Products*, 982 F.2d 1527, 1537-1538 (Fed. Cir. 1992). In *Hayes Microcomputer*, the Federal Circuit held that a description of the "function" of firmware was sufficient to comply with the written description requirement, and that the actual programming need not be disclosed:

> One skilled in the art would know how to program a microprocessor to perform the necessary steps described in the specification. Thus, an inventor is not required to describe every detail of his invention. An applicant's disclosure obligation varies according to the art to which the invention pertains. Disclosing a microprocessor capable of performing certain functions is sufficient to satisfy the requirement of section 112, first paragraph, when one skilled in the relevant art would understand what is intended and know how to carry it out.

*Id*. at 1534-1535. The Federal Circuit reached a similar conclusion in *Fonar Corp. v. Gen. Elec. Co.*, holding that "normally, writing code for … software is within the skill of the art, not requiring undue experimentation, once its functions have been disclosed.... Thus, flow charts or source code listings are not a requirement for adequately disclosing the functions of software." 107 F.3d at 1549. Accordingly, contrary to JHA's argument, the specification of the '003 Patent need not disclose any specific software for the claimed processing device in order to satisfy the written description requirement.

### 2. The Specification Discloses Algorithms

Although not strictly necessary, the specification of the '003 patent actually does disclose algorithms for performing the functions of the claimed processing device.  Importantly, "an algorithm can be expressed in many forms, including flow charts, a series of specific steps, mathematical formula, prose and so on." *Triton Tech of Texas, LLC v. Nintendo of America, Inc.,* 753 F.3d 1375, 1378 (Fed. Cir. 2014).  Here, as JHA's motion concedes, Mr. Joao during his deposition directed JHA to at least four different figures and seven columns of text where

various algorithms for the claimed processing device are disclosed. D.I. 139 at 35, Fn. 31; D.I. 140-11, Stitt Decl. Ex. 11.  The cited columns of text contain numerous disclosures in prose of the algorithms for the claimed processing device. See, e.g., D.I. 1-1, col. 24:60-28:65 (explaining the steps of Figures 6A-6C). The referenced figures are flow charts of the exact type which have repeatedly been found by the Federal Circuit to sufficiently disclose algorithms for processing devices. See D.I. 1-1, figures 3A-C; 6A-C. At the very least, these portions of the specification undoubtedly disclose the functions of the processing device, which is sufficient under Federal Circuit precedent to satisfy the written description requirement.

Incredibly, JHA's Motion entirely ignores these extensive disclosures. Not once does JHA point to any text or figure in the specification and explain why a person skilled in the art would not recognize it as a description of the claimed processing device. JHA does criticize the specification for disclosing "widely known data processing and/or software routines, which are known to those skilled in the art." D.I. 139 at p. 35 (citing col. 25:18-23). JHA admits that this disclosure serves to satisfy the enablement requirement for the claimed processing device, a concession JBTS hereby accepts. D.I. 139 at p. 35. But JHA's contention that such a disclosure cannot serve to satisfy the written description requirement is simply incorrect.  On the contrary, referring to prior art in satisfying the written description requirement is not only permissible, it is encouraged. That which is conventional or well known to one of ordinary skill in the art need not be disclosed in detail. See Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384 (Fed. Cir. 1986); see also Capon v. Eshhar, 418 F.3d 1349, 1357 (Fed. Cir. 2005) ("The 'written description' requirement must be applied in the context of the particular invention and the state of the knowledge…. As each field evolves, the balance also evolves between what is known and what is added by each inventive contribution."). Prior art may help bridge gaps in disclosure, as

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

written description compliance depends in part on the scope and content of the prior art, the maturity of the technical field, and the predictability of the technology at issue. *Ariad*, 598 F.3d at 1351. Accordingly, "a patentee can rely on information that is 'well-known in the art' to satisfy written description." *Streck, Inc.*, 665 F.3d at 1285.

### 3.   JHA's Failure To Offer Expert Testimony On Written Description Is Fatal

JHA offers no testimony from the perspective of a person of ordinary skill in the art addressing the written description requirement. No such testimony is cited in JHA's Motion, and none is included in JHA's attached expert reports.[3] As noted above, compliance with the written description requirement is analyzed from the perspective of the hypothetical person of ordinary skill in the art to which the claimed subject matter pertains. See *In re* Smith, 481 F.2d 910, 914 (C.C.P.A. 1973) ("Compliance with the first paragraph of § 112 is adjudged from the perspective of the person skilled in the relevant art."); *Ariad*, 598 F. 3d at 1351 (written description is evaluated "from the perspective of a person of ordinary skill in the art."). JHA does not offer any testimony from a person of ordinary skill in the art explaining, for example, how Figures 6A-C and the accompanying columns of text fail to satisfy the written description requirement.  Absent testimony from a person of skill in the art, JHA cannot show by clear and convincing evidence that the asserted claims fail the written description requirement. In evaluating indefiniteness, the Federal Circuit has held several times that determining whether, for a specific function, the

---

[3] Mr. Fulton's report includes a section entitled "Written Description of the '003 Patent," but this section addresses whether claim 122 is enabled, repeatedly referring to "substantial" and "undue" experimentation. D.I. 140-18 at pp. 31-34.  Appendix B to Mr. Fulton's report further makes clear, in a section entitled "B. Enablement: Lack of Written Description," that his opinions are directed to the enablement requirement.  Dr. Kursh's report contains a section entitled "Enablement (35 U.S.C. § 112, Nautilus)," which does not address the written description requirement.  D.I. 140-1 at pp. 25-29. Notably, neither expert addresses either the legal standard for the written description requirement or whether any portion of the specification does or does not satisfy the requirement.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

description in the specification is adequate from the viewpoint of a person of ordinary skill in the field of the invention requires evidence from a qualified expert. See *Telecordia Technologies, Inc. v. Cisco Systems, Inc.*, 612 F.3d 1365, 1377 (Fed. Cir. 2010); *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338-1339 (Fed. Cir. 2008); see also *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011) ("The defendants have directed us to no evidence that a programmer of ordinary skill in the field would not understand how to implement this function.") These cases involve computer-implemented means-plus-function limitations, and thus arise in the context of 35 U.S.C. § 112, ¶ 6. They are nevertheless instructive. If expert testimony is required to determine whether a specification adequately discloses an algorithm for a computer implemented means-plus-function limitation under § 112, ¶ 6, similar testimony should be required to determine whether a specification meets the less exacting requirements of § 112 ¶ 1. JHA's failure to present such testimony dooms its written description argument.

### 4. Mr. Joao's Qualifications Are Irrelevant

JHA's real argument seems to be that Mr. Joao lacked the experience or qualifications necessary to provide an adequate written description of the inventions of the '003 Patent. As an initial matter, this argument is factually incorrect. Mr. Joao actually testified at his deposition that he previously "programmed computers that were used on fighter jets" and would have been capable of programming a bank computer to perform the functions recited in is patent. (Joao Depo., Mar. 18, 2014 Tr. at 259:24 – 260:8. See JBTS-2010-2017.).[4] Given that Mr. Joao could have actually written the relevant software, he was certainly capable of meeting the lower standard of providing an adequate written description of his claimed inventions. Even if Mr. Joao

---

[4] Perhaps this is why JHA chose not to include Mr. Joao's actual deposition testimony, instead submitting only the text and Figures to which Mr. Joao referred during his deposition. D.I. 140-11. JBTS has submitted the entire relevant portion of the transcript for the Court's consideration.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

had been incapable of writing such software, however, JHA's argument is legally incorrect. Anyone who invents or discovers a new and useful process, machine, manufacture or composition of matter is qualified to be an inventor, regardless of their prior resume. 35 U.S.C. § 101. Neither the written description requirement nor any other patent statute imposes a minimum level of skill or qualification for inventors, and inventors need not have any particular skill in the field of their invention. To the contrary, the second sentence of 35 U.S.C. § 103(a) arguably prohibits a "minimum qualifications" requirement for inventorship. 35 U.S.C. § 103(a) ("Patentability shall not be negated by the manner in which the invention was made.") JHA's argument that Mr. Joao was incapable of inventing the asserted claims is thus factually incorrect and legally irrelevant.

## C. <u>THE ASSERTED CLAIMS ARE DIRECTED TO PATENT ELIGIBLE SUBJECT MATTER</u>

### 1.  JHA's Newly-Proposed "Abstract Ideas" Should Be Stricken

Prior to filing its summary judgment motion, JHA had offered five different versions of the "abstract idea" to which the asserted apparatus claims are purportedly directed.  JHA's Final Invalidity Contentions contained three different "abstract ideas," and its expert reports on invalidity contained two more. <u>See</u> Final Invalidity Contentions, July 29, 2014 at pp. 19-20 (See JBTS-001-0054); Kursh Report, D.I. 140-1 at pp. 9, 29-30. Relying on these disclosures, JBTS's expert Mr. Cheng addressed all five proposed "abstract ideas" in his rebuttal report. See JBTS-0638-0671.) There, he explained in detail why each proposed "abstract idea" was an inappropriate description of the asserted claims. *Id*. Again relying on JHA's disclosures, JBTS's counsel asked Dr. Kursh at his deposition about his proposed abstract ideas. Kursh Depo., Sep. 5, 2014 at 243:3-247:6.  <u>See</u> JBTS-2061-2064.  JBTS then filed a motion for summary judgment

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

that the asserted claims were not directed to any of JHA's then-proposed "abstract ideas." D.I. 143 at § VI.D.

Unbeknownst to JBTS, JHA was abandoning its prior invalidity contention and secretly developing a new one. In its present motion, JHA makes a sixth attempt to identify the abstract idea to which the asserted claims are purportedly directed. Indeed, JHA now argues for the first time that the asserted claims are actually directed to one of two different abstract ideas. JHA even argues that some asserted claims may be directed to both of these newly-proposed abstract ideas. Its current proposal is thus really more of a menu of supposedly "abstract ideas" from which it may later select. This newly proposed menu of abstract ideas is being offered for the first time after the close of fact discovery, after JHA submitted its final invalidity contentions, after the parties exchanged expert reports, after experts have been deposed and after JBTS filed its motion for summary judgment. The prejudice to JBTS in allowing JHA's new argument is obvious. Because of JHA's shifting-sands approach, JBTS has not had the opportunity to depose either Mr. Fulton or Dr. Kursh on these new "abstract ideas." JBTS's expert has not had an opportunity to offer his opinions in response. Moreover, JBTS has lost the opportunity to address this new "abstract idea" in its motion for summary judgment. JHA should not be permitted to change its § 101 argument so fundamentally this late in the game. Instead, its new argument should be stricken.

Moreover, by adopting this newly-proposed, modular, menu of "abstract ideas," JHA has abandoned its five previously-proposed "abstract ideas." The Court should thus grant JBTS's motion for summary judgment that the asserted claims are not directed to any of those five abstract ideas, since the point is no longer disputed. If JHA's newly-proposed "abstract idea" is stricken as untimely disclosed, JHA will no longer have a viable contention that the asserted

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

claims are directed to patent ineligible subject matter. The Court can thus grant JBTS's motion in its entirety and find that the claims are not invalid for claiming patent-ineligible subject matter under 35 U.S.C. § 101.

### 2.   The Asserted Claims Are Not Directed To JHA's Sixth Proposed "Abstract Idea"

Even if the Court does not strike JHA's new contention as untimely, it should nevertheless find that the asserted claims are not directed to any of JHA's newly-proposed "abstract ideas." JHA's proposal fails to accurately describe the claims. Even if it did, JHA's proposed "ideas" are not "abstract" under the Supreme Court's *Alice* test.

First, JHA asserts that claims 30, 102 and 122 are directed to the "abstract idea" of "comparing a bank transaction (a check) to account rules or limits." (D.I. 139 at 12.) JHA's proposal does not accurately characterize claim 30. Claim 30 is not directed to all bank transactions, nor is it limited to checks. It is directed to "bank transaction[s] involv[ing] a withdrawal from a checking account or a cashing of a check." D.I. 1-1, col. 47:22-24. JHA's proposal similarly fails to accurately describe claims 102 and its dependent claim 122. Those claims are directed to "account[s] … utilized in transactions involving the purchase of good and services," are not limited to bank transactions, and are certainly not limited to checks. D.I. 1-1, col. 55:12-14. More importantly, JHA's proposal ignores what may be the most important element of these claims – that the "limitation or restriction" comes from the "communications device associated with an individual account holder." D.I. 1-1 col. 47:27-30. The limitation or restriction is transmitted over the Internet or World Wide Web, automatically received by the receiver, automatically stored by the memory device, and utilized in processing the bank transaction or authorization request. D.I. 1-1 col. 47:19-43; col. 55:10-31. JHA's proposal ignores that the account holder is the source of the "limitation or restriction," and further ignores

that the account holder did not have to appear at the bank, or physically sign anything, or even speak to anyone at the bank, in order to apply the limitation or restriction. Instead, the limitation or restriction is sent over the Internet or World Wide Web and can thus be sent from anywhere, and is used in the account "automatically" without further human intervention. That is a very different concept than the kinds of "account rules or limits" discussed in JHA's cited prior art. It is not merely using a computer to accelerate an ineligible mental process as JHA claims. D.I. 139 at 13. These claims use new and novel machines to give the account holder more control over their account than they had with prior art banking systems.

JHA next argues that the "abstract idea" of the remaining asserted claims is "advising the account owner of the action or requesting approval." D.I. 139 at 12. Again, JHA's proposal fails to accurately describe the asserted claims. In fact, none of the asserted claims require "requesting approval" from an account holder. Nor do any of the asserted claims require "advising the account owner of the action." Claims 31 and 106 recite a signal which "contains information regarding the banking transaction." D.I. 1-1, col. 47:48-49; 55:42-43. Claim 317 and its dependent claims recite that the communication device "provides information … regarding the transaction." D.I. 1-1, col. 74:27-29. Similarly, claim 414 and its dependent claims recite that "information regarding the banking transaction" is transmitted. D.I. 1-1, col. 83:35-37. Providing information regarding a transaction is not necessarily "advising the account owner of [an] action," and is a far cry from "requesting approval" of the transaction. Those may satisfy the claim limitations, but they are certainly not required. Moreover, JHA's proposal once again ignores that, in every relevant claim, the information regarding a transaction is sent over the Internet or World Wide Web to a communications device associated with an individual account holder. Again, this information is conveyed conveniently to the account holder, without having

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

to appear at the bank, without speaking to a bank employee, and without having to wait for a monthly statement to arrive in the mail. These claims are thus using new and novel machines to give account holders ready access to account information, access which was not available with prior art banking systems.

JHA has attempted six different times now to identify an abstract idea to which the asserted claims are purportedly directed. That six different proposals were necessary is itself telling. JHA's most recent attempt does not accurately characterize the limitations of the claims and ignores numerous important aspects of the claims which make the inventions advantageous over the prior art. JHA's newly-proposed abstract idea should be rejected for these reasons.

There is another reason JHA's proposal should be rejected – it does not contain an "idea" that is "abstract." Instead, both parts of JHA's modular proposal recite actions – "comparing" and "advising" – which are not ideas at all. The actions of the asserted claims are performed by the claimed apparatuses, and are not in any way abstract. Notably, the Supreme Court has carved out three exceptions to the broad statutory categories of patent eligible subject matter, namely that "laws of nature, physical phenomena, and abstract ideas" may not be patented. *Bilski v. Kappos*, 561 U.S. 593, ___, 130 S.Ct. 3218, 3225, 177 L.Ed.2d 792 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)). Even if JHA's proposal accurately described the claims, and even if it stated an "idea" instead of an action, the stated "idea" here is not "abstract." The actions of (i) comparing checks to account rules or limits and (ii) notifying account holders of the action taken are not akin to a law of nature, or a physical phenomenon, or an abstract idea of the type the Supreme Court has found unpatentable. To the extent JHA's proposal even states idea, they are concrete and not abstract. Notably, under Federal Circuit law, the mere fact that the apparatuses of the asserted claims "generate" a "signal" is by itself enough

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

to demonstrate that the claims are directed to machines, not abstract ideas. *In re Nuijten,* 500 F.3d 1346, 1356 fn. 4 (2007) ("An apparatus that *generates* the signal is of course a machine.")(emphasis original). JHA's proposed "abstract ideas" must be rejected.

### 3. Even if Directed To An Abstract Idea, The Asserted Claims Would Still Be Patentable

Even if the claims were somehow found to be directed to an abstract idea, they would nevertheless still be patentable. This is because, under step two of the Mayo framework, the limitations of the asserted claims transform the claim to such an extent that it nevertheless claims only subject matter that is patentable. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.,* 573 U.S. __, 134 S.Ct. 2347, 2355, 189 L.Ed.2d 296 (2014).

#### a. The Asserted Claims Require More Than A General Purpose Computer

JHA argues that the asserted claims recite no more than a generic computer. D.I. 139 at 13. This is incorrect. There is nothing vague about the claims, each of which describes detailed requirements for a particular machine. *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.,* 758 F.3d 1344, 1348-1349 (Fed. Cir. 2014) ("claimed invention must be a 'concrete thing, consisting of parts, or of certain devices and combination of devices.'" quoting *Burr v. Duryee,* 68 U.S. 531, 570, 1 Wall. 531, 17 L.Ed. 650 (1863)); *In re Ferguson,* 558 F.3d 1359, 1364 (Fed. Cir. 2009). Even where otherwise directed to an abstract idea, claims have nevertheless been found valid under 35 U.S.C. § 101 where they "explicitly require[d] the use of a particular machine." *SiRF Technology, Inc. v. International Trade Com'n,* 601 F.3d 1319, 1333 (Fed. Cir. 2010). Moreover, even claims directed to the abstract idea of "verifying transaction information" have been found to be patent-eligible where the claim transformed the abstract idea into something with "concrete effect in the field of electronic communications." *Card*

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

*Verification Solutions, LLC v. Citigroup Inc.*, Case No. 1:13-cv-06339, 2014 WL 4922524, *5 (N.D. Ill. Sep. 29, 2014).

Here, many of the asserted claims expressly recite very specific computers. Claim 317 and its dependent claims recite a "central transaction processing computer," which the Court has construed as "a computer through which banking or other transactions are processed." D.I. 124 at 9-10. JHA does not even argue that he many functions of the central transaction processing computer identified in the specification could be performed by any generic computer available in 1996. Claim 414 and its dependent claims recite a "network computer," which under the Court's claim construction is a category of devices which expressly excludes certain general purpose computers.  D.I. 124 at 12 ("A 'network computer' as used, therefore, is distinguishable from a personal computer.") Dependent claims 343 and 416 recite that the claimed communications device is a wireless device, which again is a specific category of devices and not just a general purpose computer. These claims undoubtedly disclose more than a general purpose computer.

Even the computers of claims 30 and 102 are not "general purpose computers." As JHA's motion notes, there is more to these claims than a processing device, a memory device, a receiver and a transmitter. As JHA points out, the specification makes clear that the "processing device" and "memory device" of the asserted claims are part of a "central processing computer" programmed at least in part with known bank processing software. D.I. 139 at 21-23; D.I. 1-1, col. 25:17-24. JHA incorrectly argues that the identified software is generic. But this is hardly the kind of software one would expect to find on any generic computer in 1996. Nor would one expect any general purpose computer in 1996 to even have the processing power and memory necessary to operate bank processing software. Instead, the bank processing software alone demonstrates that the claimed apparatus is a special purpose, not general purpose, computer.  Mr.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

Fulton's expert report further illustrates the point. There, he argues that "every computer in a transaction processing environment" would have certain structures of the asserted claims. D.I. 140-18 at ¶¶ 25-28; see also id. at ¶ 18 (describing computer systems "in a commercial transaction processing environment"). But computers "in a transaction processing environment" are not general purpose computers. They are necessarily special purpose computers, specially adapted to the transaction processing environment.

JHA argues that the *Planet Bingo* case is analogous, in that the asserted claims "do not claim" the bank processing software. D.I. 139 at 22 (citing *Planet Bingo, LLC v. VKGS LLC*, 2014 WL 4195188 (Fed. Cir. 2014)). JHA contradicts its own argument, though, by later conceding that "[t]he logical operations of the 'processing device,'" which are performed in part by the bank processing software identified in the specification, "are stated claim limitations." D.I. 139 at 38. JHA's later argument is correct – the bank processing software identified in the specification performs in part the claimed functions of the processing device, thus demonstrating that the claimed devices are special purpose computers.

Finally, the asserted claims recite a number of technologies that were far from conventional in 1996. For example, it was not at all conventional in 1996 for a bank's memory device to automatically accept a limitation or restriction directly from an account holder's communications device, as recited in claims 30 and 102. Cheng Decl., JBTS MSJ, ¶¶ 49-50. D.I. 144-5, JBTS-0655 - 0656.  Indeed it was far more common for a bank to define limitations and restrictions for all account holders. Id., ¶ 50. As another example, it was not at all conventional in 1996 for a bank's computer to transmit information regarding a transaction to an account holder's communications device as recited in claims 31, 34, 106, 317 and its dependents and 414 and its dependents. It was certainly not conventional in 1996 for a bank's computer to

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

communicate with an account holder's communications device over the Internet or the World Wide Web as required by all asserted claims, or to process Internet transactions as required by claim 324. Nor was it conventional for a bank's computer to send an electronic mail message as required by claim 34, or to communicate with a wireless device as required by claims 343 and 416. *Id.* at ¶¶ 50.

### b. The Asserted Claims Cannot Be Infringed By Mental Steps

JHA argues that the asserted claims cover no more than mental steps previously performed by humans. To illustrate this, JHA offers as an example a conversation between Mr. Ashley, a bank teller, and Ms. Samuels, an account holder. This example entirely fails to prove that the asserted claims are directed to mental steps, primarily because this example would not infringe the asserted claims. For claims 30 and 102, when Ms. Samuels asks Mr. Ashley to stop payment on Check No. 235, that is not a "limitation or restriction" according to JHA's own expert Mr. Calman. Calman Depo, Sep. 16, 2014 Tr. at 170:22-24; 191:7-14); See JBTS-2018-2022.)Even if it were, the limitation has not been transmitted from a personal communications device associated with Ms. Ashley, has not been transmitted to a receiver on or over the Internet or World Wide Web, and has not been received automatically or stored automatically since Mr. Ashley hearing and memorizing the request is by definition human interaction. Nor does Mr. Ashley "generate" an electromagnetic "signal containing information for allowing or disallowing the banking transaction" as required by the Court's claim construction. For claim 317, Mr. Ashley's eyes do not input or enter transaction information into an apparatus. Mr. Ashley's mind does not "generate" an electromagnetic "signal corresponding to the transaction," and doesn't do so "independently of the central transaction processing computer." Mr. Ashley certainly does not "transmit" electromagnetic signals to "a communications device associated with" Ms. Samuels

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

on or over the Internet or World Wide Web. A person's mind cannot, of course, send signals over the Internet to pagers, computers, televisions, watches, faxes and the like. Similarly, for claim 414, Mr. Ashley's mind cannot "generate" an electromagnetic "signal containing information regarding a banking transaction," cannot transmit that signal to a network computer in real time, and cannot transmit the information regarding the banking transaction to a communications device associated with Ms. Samuels on or over the Internet or World Wide Web.

### c.   The Asserted Claims Do Not Preempt An Abstract Idea

Even accepting JHA's newly-proposed abstract ideas, and assuming the claims do not add enough to make them patentable, the claims do not entirely preempt the public from practicing that abstract idea, the primary concern of the Supreme Court's <u>Mayo</u> test. *Alice*, 134 S.Ct. at 2354-2355. The question to be answered with respect to preemption is whether the claims provide substantial limitations so that the patent does not cover all of the abstract idea. *Accenture Global Servs., GmbH v. Guidewire Software, Inc*., 728 F.3d 1336, 1341 (Fed. Cir. 2013).   "The second step in the § 101 analysis requires determining whether 'additional substantive limitations ... narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.'" *Card Verification Solutions*, 2014 WL 4922524 at *5 (<u>quoting</u> *Accenture Global Servs.,* 728 F.3d at 1341 (internal citations and quotation marks omitted)). The asserted claims clearly do not preempt the public from practicing JHA's proposed abstract ideas.

Here, JHA has attempted to broadly define the "abstract idea" to which the asserted claims are directed as "comparing a bank transaction (a check) to account rules or limits" and "advising the account owner of the action or requesting approval" of the transaction.  But the broader the

abstract idea, the harder it is to prove that the claims entirely preempt the public from practicing the abstract idea. It is difficult to see how the claims of the '003 Patent could entirely preempt the public from practicing JHA's broad abstract ideas, either alone or certainly not  in combination.  Indeed, as JHA has pointed out, the general concepts of comparing bank transactions to rules or limits and advising account owners of actions on their account predates the application that resulted in the '003 Patent.  JHA's broad formulation of the alleged "abstract idea" leads to the conclusion that there are numerous ways to provide banking transaction security without infringing the '003 Patent. JHA's own Mr. Ashley/Ms. Samuels scenario provides numerous examples of how the public could practice JHA's "abstract ideas" without infringing the claims of the '003 Patent. There are other simple ways to avoid infringing the asserted claims while still practicing JHA's newly-proposed abstract ideas. For example, a bank could communicate with its account holders in person, by mail, or via live customer service representatives over the telephone without infringing. Banks could require that the claimed limitations or restrictions be entered by bank employees, rather than coming from an account holder's communications device, and thereby avoid infringement.  A bank could use direct-dial, modem-to-modem communications, or the then-conventional x.25 communications network, to communicate with its account holders rather than the Internet or World Wide Web. For some dependent claims, all that is required to avoid infringement is the use of a wired, and not wireless, device. In sum, there are many ways to implement JHA's newly-proposed abstract ideas without infringing a wide variety of the asserted claims. It cannot be said, then that the asserted claims preempt the public from practicing the claimed invention. The asserted claims are therefore patentable under step two of the *Alice* test.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

### 4.   The Machine-Or-Transformation Test Is Inapplicable

JHA's Brief correctly notes that the machine or transformation test was used by the Supreme Court to determine whether *process* claims are patent-eligible. D.I. 139 at 9. JHA's Brief also correctly notes that the asserted claims – in fact, all claims of the '003 Patent – are *apparatus* claims. Apparatus claims are, by definition, directed to the statutory category of "machine" as set forth in 35 U.S.C. § 101. Step 1 of the machine-or-transformation test asks whether the claims are "tied to a particular machine or apparatus." The asserted claims obviously and easily pass this test, since they expressly claim a machine. JHA appears to argue here that the limitations of the asserted claims recite no more than a generic computer. This is incorrect, for all the reasons set forth above in Section C.3.a, "The Asserted Claims Require More Than A General Purpose Computer." There is no need to repeat those arguments here.

### D.  JHA's COLLATERAL ESTOPPEL ARGUMENT IS IMPROPER

#### 1.   JHA's Affidavits on Collateral Estoppel Should be Stricken

##### a.  *Mr. Fulton's Affidavit Should be Stricken as Untimely Disclosed*

Mr. Fulton provides new testimony that was not disclosed in his Invalidity Expert Report served August 18, 2014.  D.I. 140-13.  Because he failed to disclose this testimony regarding the '725 patent and its claim terms, and the '725 patent litigation in the Southern District of New York, and his opinion as to similarities to the language of the Asserted Claims of the '003 Patent, his testimony should be stricken.  For example, Mr. Fulton's new declaration sets forth a comparison and analysis of this Court's claim constructions in view of the claim constructions that issued during the '725 Patent litigation.  See D.I. 140-13, ¶¶ 16-27.  Mr. Fulton provides additional evidence in the form of a chart in support of his affidavit.  (D.I. 140-13 at pp. 11-25).  However, this chart was never previously disclosed to Plaintiff, and the content of the chart was

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

not previously disclosed in fact or expert discovery.  Because Mr. Fulton's testimony, and the facts and basis for Mr. Fulton's opinion as to the collateral estoppel effect of the '725 Patent litigation on this case, were not previously disclosed, they must be stricken as improper and prejudicial to Plaintiff.  Plaintiff did not have an opportunity to depose Mr. Fulton on these opinions.  Plaintiff would suffer extreme prejudice if this new expert evidence were now admitted and considered by the Court.

   *b.  Mr. Henley's Declaration Should Be Stricken As Improper Expert Testimony*

JHA also submits declaration testimony provided by Mr. Henley, whose testimony was provided to Plaintiff for the first time when JHA's Motion was filed on September 29, 2014.  Mr. Henley is not an expert in this case, was never disclosed as an expert, and denied giving expert testimony in the '725 Patent Litigation in discovery in this case, despite JHA disclosing Mr. Henley as an expert on the public record in 2010.  See S.D. N.Y. D.I. 72; See JBTS-2008-2009; Henley Depo. May 5, 2014, 8:25-9:3; See JBTS-2040-2041.  Despite never having been disclosed as an expert, Mr. Henley now offers opinions on the proper scope of the claims of both the '003 and '725 Patents.  If JHA wanted to rely on Mr. Henley as an expert, it needed to disclose him long ago, and Mr. Henley needed to submit an appropriate expert report identifying his experience, qualifications, methodology used and the documents and other evidence he considered in forming his opinions. Further, Mr. Henley needed to sit for an expert deposition so that JBTS could examine him on these subjects. JHA has deprived JBTS of the opportunity to test Mr. Henley's expert conclusions, and should thus not be permitted to submit expert testimony from him into the record now.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

*c.  Both Mr. Fulton's and Mr. Henley's Testimony Are Unnecessary*

The dispute on collateral estoppel is fundamentally a question of law, and requires a determination on the scope of the claims of both patents as construed by the Court.  These are matters of law for the Court to decide, and for which expert testimony is unnecessary and improper.  Accordingly, the affidavits of Mr. Henley (D.I. 140-12) and Mr. Fulton (D.I. 140-14) should be stricken from the record as unnecessary.

**2.  JHA's Collateral Estoppel Argument Is An Improper Motion For Reconsideration**

Even if the Court were to permit the affidavits of Mr. Fulton and Mr. Henley to be admitted, JHA has not properly presented its argument on the issues of collateral estoppel.  The parties and this Court previously briefed the issue of collateral estoppel, and the Court ruled that the '003 Patent was directed to patentably distinct inventions than the '725 patent.  (D.I. 124 at p. 20, fn. 34).  JHA should thus have raised its defense on collateral estoppel in a motion for reconsideration.  Indeed, JHA concedes as much in its Brief. D.I. 139 at p. 32, fn. 27.

Motions for Reconsideration have a heightened standard, which JHA fails to address and cannot overcome.  "Motions for reconsideration are the 'functional equivalent' of motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e)."[5] *Daoud v. City of Wilmington*, 946 F.Supp.2d 369, 372 (D. Del. 2013) (<u>citing</u> *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1352 (3d Cir.1990)). "The standard for obtaining relief under Rule 59(e) is difficult to meet. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (<u>citing</u> *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999)). "A court should exercise its discretion to alter or

---

[5] A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.  Fed. R. Civ. Proc. 59(e).

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

amend its judgment only if the movant demonstrates one of the following: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted." <u>See</u> *Id*.

JHA fails to present its collateral estoppel argument under the proper standard of law. Further, the time for filing a motion for reconsideration has long since passed, as any such motion should have been brought within twenty-eight days of entry of the judgment.  Fed. R. Civ. Proc. 59(e).  Not only is JHA's argument regarding collateral estoppel not brought within the contexts of the proper legal framework of Rule 59(e), JHA does not meet its heightened burden for obtaining relief.

## V.    CONCLUSION

For all of the above and foregoing reasons, JHA's Motion for Summary Judgment of Invalidity should be denied. Additionally, the arguments and evidence listed in JBTS's concurrently-filed Motion to Strike should be stricken from the record.

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**

Dated: <u>October 13, 2014</u>

*Attorneys for*
*Plaintiff Joao Bock Transaction Systems, LLC*

*/s/ Stamatios Stamoulis*

**STAMOULIS & WEINBLATT LLC**

Stamatios Stamoulis #4606
    stamoulis@swdelaw.com
Richard C. Weinblatt #5080
    weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, Delaware  19809
Telephone: (302) 999-1540

**HENINGER GARRISON DAVIS, LLC**

Jonathan R. Miller, *Pro Hac Vice*
    Email: jmiller@hgdlawfirm.com
Joseph J. Gleason, *Pro Hac Vice*
    Email: jgleason@hgdlawfirm.com
Jacqueline K. Burt, *Pro Hac Vice*
    Email: JBurt@hgdlawfirm.com
3621 Vinings Slope, Suite 4320
Atlanta, Georgia  30339
Telephone:  (404) 996-0863, 0862, 0861

Steven W. Ritcheson, *Pro Hac Vice*
    Email: swritcheson@hgdlawfirm.com
9800 D Topanga Canyon Boulevard, #347
Chatsworth, California 91311
Telephone:  (818) 882-1030

M. Blair Clinton, *Pro Hac Vice*
    Email: bclinton@hgdlawfirm.com
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 327-9116

Maureen V. Abbey, *Pro Hac Vice*
    Email: maureen@hgdlawfirm.com
220 St. Paul Street
Westfield, New Jersey 07090
Telephone:  (908) 379-8475

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC'S BRIEF IN OPPOSITION TO JACK HENRY & ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND IN SUPPORT OF ITS MOTION TO STRIKE**