IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOAO BOCK TRANSACTION SYSTEMS, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 12-1138-SLR |
| JACK HENRY & ASSOCIATES, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

Stamatios Stamoulis, Esquire and Richard C. Weinblatt, Esquire of Stamoulis & Weinblatt LLC, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jonathan R. Miller, Esquire, Joseph J. Gleason, Esquire, Jacqueline K. Burt, Esquire, Steven W. Ritcheson, Esquire, M. Blair Clinton, Esquire, and Maureen V. Abbey, Esquire of Heninger Garrison Davis, LLC.

Shanti M. Katona, Esquire of Polsinelli PC, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Russell S. Jones, Jr., Esquire, Richard P. Stitt, Esquire, and Joshua M. McCaig, Esquire of Polsinelli PC.

**MEMORANDUM OPINION**

Dated: December 15, 2014
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On September 14, 2012, Joao Bock Transaction Systems, LLC ("plaintiff") filed a complaint against defendant Jack Henry & Associates, Inc. ("defendant"), alleging that certain of defendant's products, "such as but not limited to its 'goDough' and 'NetTeller Online Banking'" products, infringe the '003 patent. (D.I. 1) On December 3, 2012, defendant answered and counterclaimed for declaratory judgment of invalidity. (D.I. 6) On June 13, 2013, the court denied plaintiff's motion to dismiss the counterclaim and granted defendant's motion for leave to file an amended counterclaim, which was filed the same day. (D.I. 30; D.I. 32) On June 27, 2013, plaintiff answered the counterclaim. (D.I. 33) The court issued its claim construction order on June 30, 2014 and denied defendant's motion for summary judgment of invalidity based on collateral estoppel. (D.I. 124)

Presently before the court are the parties' competing motions for invalidity and validity (D.I. 138; D.I. 142) and competing motions for infringement and non-infringement (D.I. 146; D.I. 149). Plaintiff has filed a motion to strike defendant's motion for summary judgment of invalidity (D.I. 157) and a motion to strike portions of defendant's motion for summary judgment of non-infringement and portions of defendant's opposition to plaintiff's motion for summary judgment of infringement (D.I. 196). Defendant has filed a motion to strike new infringement theories and product functionality (D.I. 152) and a motion to strike portions of the expert infringement report of Alex Cheng (D.I. 181). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

### A. The Parties

Plaintiff is a limited liability company organized under the laws of the State of Delaware. It maintains its principal place of business in Yonkers, New York. Its principal owner is Raymond Joao who is a licensed patent attorney and the inventor of the '003 patent. (D.I. 1 at ¶¶ 1-2)

Defendant is a banking software development corporation duly organized and existing under the laws of the State of Delaware, having a place of business located in Monett, Missouri. Defendant creates software solutions for smaller community and regional banks. Defendant conducts business through its website www.jackhenry.com and has several products including, but not limited to, "Cash Management," "goDough®," and "NetTeller Online Banking™." These products enable banking customers to perform online banking transactions using mobile phones and/or home computers. (D.I. 1 at ¶¶ 3; D.I. 32 at 1-2)

### B. Technology Overview

The '003 patent, titled "Transaction Security Apparatus," was filed on September 10, 2001 and issued on August 22, 2006. The patent is directed to an apparatus and a method for the real-time authorization, notification and/or security of financial transactions involving credit cards, charge cards, debit cards, and/or currency or "smart" cards that enable a cardholder to monitor, in real-time, all activity involving his or her card(s) and the corresponding account numbers. The invention adds transaction security by allowing interaction between the central processing computer and a

communication device to enable the point-of-sale terminal operator or the card holder to allow or deny a transaction using the communication device over a communications network.

## III. STANDARDS OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B. Invalidity**

The standard of proof to establish the invalidity of a patent is "clear and convincing evidence." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1058 (Fed. Cir. 2004); *see also, Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013), vacated sub nom. *WildTangent, Inc. v. Ultramercial, LLC*, —— U.S. ——, 134 S.Ct. 2870 (2014). Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law

in establishing the validity of the patent. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013), *aff'd, Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, — U.S. —, 134 S.Ct. 2347 (2014); *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008) (citing *In re Comiskey*, 499 F.3d 1365, 1371 (Fed. Cir. 2007)) ("*Bilski I*"). Section 101 provides that patentable subject matter extends to four broad categories, including: "new and useful process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101; *see also Bilski v. Kappos*, 561 U.S. 593, 601 (2010) ("*Bilski II*"); *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). A "process" is statutorily defined as a "process, art or method, and includes a new use of a known process, machine manufacture, composition of matter, or material." 35 U.S.C. § 100(b). The Supreme Court has explained:

> A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence.

*Diamond v. Diehr*, 450 U.S. 175, 182–83 (1981) (internal quotations omitted).

The Supreme Court recognizes three "fundamental principle" exceptions to the Patent Act's subject matter eligibility requirements: "laws of nature, physical phenomena, and abstract ideas." *Bilski II*, 561 U.S. at 601. The Supreme Court has held that "[t]he concepts covered by these exceptions are 'part of the storehouse of

5

knowledge of all men ... free to all men and reserved exclusively to none.'" *Bilski II*, 561 U.S. at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). "[T]he concern that drives this exclusionary principle is one of pre-emption," that is, "'that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity." *Alice*, 134 S.Ct. at 2354 (citing *Bilski II*, 561 U.S. at 611-12 and *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. —, 132 S.Ct. 1289, 1301 (2012)).

Although a fundamental principle cannot be patented, the Supreme Court has held that "an **application** of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection," so long as that application would not preempt substantially all uses of the fundamental principle. *Bilski II*, 561 U.S. at 612 (quoting *Diehr*, 450 U.S. at 187) (internal quotations omitted); *Bilski I*, 545 F.3d at 954. The Supreme Court recently reiterated the

> framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "'inventive concept'"—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Alice Corp.*, 134 S.Ct. at 2355 (citing *Mayo*, 132 S.Ct. at 1294, 1296-98).[1] "[T]o

---

[1]The machine-or-transformation test still may provide a "useful clue" in the second step of the *Alice* framework. *Ultramercial, Inc. v. Hulu, LLC*, Civ. No. 2010–1544, 2014 WL 5904902, at *6 (Fed. Cir. November 14, 2014) (citing *Bilski II*,

6

transform an unpatentable law of nature into a patent-eligible **application** of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Mayo*, 132 S.Ct. at 1294 (citing *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972)). It is insufficient to add steps which "consist of well-understood, routine, conventional activity," if such steps, "when viewed as a whole, add nothing significant beyond the sum of their parts taken separately." *Id.* at 1298. "Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." *Id.* (citations omitted). Also, the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'" *Bilski II*, 561 U.S. at 610-11 (citation omitted). For instance, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S.Ct. at 2358. "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id.* (citations omitted).

Although decided before *Alice*, the court finds the comparison of *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266 (Fed. Cir. 2012), to *SiRF*

---

561 U.S. at 604 and *Bancorp Servs., L.L.C., v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). A claimed process can be patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (en banc), *aff'd on other grounds*, *Bilski II*, 561 U.S. 593.

7

*Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010), instructive. In *Bancorp*, where the asserted patents disclosed "specific formulae for determining the values required to manage a stable value protected life insurance policy," the district court granted summary judgment of invalidity under § 101. *Bancorp*, 687 F.3d at 1270. Under the machine prong of the machine or transformation test, the district court found that "the specified computer components are no more than objects on which the claimed methods operate, and that the central processor is nothing more than a general purpose computer programmed in an unspecified manner." *Id.* at 1273. In affirming the district court's findings, the Federal Circuit explained that

> the use of a computer in an otherwise patent-ineligible process for no more than its most basic function - making calculations or computations - fails to circumvent the prohibition against patenting abstract ideas and mental processes. As we have explained, "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).
> To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.

*Id.* at 1278. Ultimately, the Federal Circuit concluded that "[t]he computer required by some of Bancorp's claims is employed only for its most basic function, the performance of repetitive calculations, and as such does not impose meaningful limits on the scope of those claims." *Id.* at 1278.

In contrast to *Bancorp*, the Federal Circuit in *SiRF* found that a GPS receiver was "integral" to the claims at issue and, therefore, the machine or transformation test was satisfied. *SiRF*, 601 F.3d at 1332. As in *Bancorp*, the *SiRF* Court emphasized that a machine will only "impose a meaningful limit on the scope of a claim [when it plays] a

8

significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." *Id.* at 1333. After noting how the GPS receiver was specifically involved in each step of the method, the Court concluded that "the use of [the] GPS receiver is essential to the operation of the claimed methods." *Id.*

In sum, although it is "clear that computer-based programming constitutes patentable subject matter so long as the basic requirements of [35 U.S.C.] § 101 are met," *AT&T*, 172 F.3d at 1360, the requirements of § 101 as applied to this area of technology have been a moving target, from the complete rejection of patentability for computer programs[2] referenced above to the much broader enunciation of the test in *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998), *abrogated by In re Bilski*, 545 F.3d 943., that is, "a computer-implemented invention was considered patent-eligible so long as it produced a 'useful, concrete and tangible result.'" *DDR Holdings, LLC v. Hotels.Com, L.P.,* Civ. No. 2013–1505, 2014 WL 6845152, at *10 (Fed. Cir. Dec. 5, 2014). As instructed by the Federal Circuit in *DDR Holdings,* its most recent attempt to bring clarity to this area of the law: (1) "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible," *id.* at *9; (2) "mathematical algorithms, including those executed on a generic computer, are abstract ideas," *id.*; (3) "some fundamental economic and

---

[2]*See, e.g.*, 33 Fed. Reg. 15581, 15609-10 (1968). Indeed, in his dissent in *Diamond v. Diehr*, 450 U.S. 175 (1981), Justice Stevens's solution was to declare all computer-based programming unpatentable. *Id.* at 219.

conventional business practices are also abstract ideas," *id.*; and (4) general use of the Internet "to perform an abstract business practice (with insignificant added activity)" does not pass muster under § 101, *id.* at *12. In order for claims addressing "Internet-centric challenges" to be patent eligible,[3] the claims must do more than

> recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations, such as the claims in *Alice, Ultramercial, buySAFE, Accenture,* and *Bancorp.*

*Id.* (citing *Alice*, 134 S.Ct. at 2359; *Ultramercial*, 2014 WL 5904902, at *5, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013); *Bancorp*, 687 F.3d at 1278).

## IV. DISCUSSION

Defendant at bar contends that the asserted claims are directed to banking practices known and used for many years and now performed on a generic computer, in other words, an "abstract idea."[4] (D.I. 139 at 12-13) The specification describes that

---

[3]Although the court understands that the advent of the Internet inspired countless inventive ways of accomplishing routine tasks better, faster, cheaper – indeed, both the PTO and the Federal Circuit considered such ingenuity sufficiently inventive under § 101 to be patent eligible – apparently such is not the case under the current legal reasoning.

[4]Plaintiff asserts that defendant has offered changing interpretations of the "abstract idea" over the course of the litigation and requests that the court strike such "abstract ideas." Defendant asserted in its affirmative defense that the subject matter of the '003 patent was not patent-eligible under § 101. (D.I. 6 at 6, ¶ 20) This defense, coupled with the explanation in defendant's initial invalidity contentions that plaintiff's patent follows the "natural progression of technology that occurred in the [19]80['s] and early [19]90's" (D.I. 195, ex. 10 at 13-15), provides notice of defendant's intent to

10

> [t]he present invention provides an apparatus and a method for providing financial transaction authorization, notification and/or security, and, in particular, provides an apparatus and a method for providing financial transaction authorization, notification and/or security in conjunction with credit card, charge card, debit card, and/or currency or "smart" card use, savings and/or checking account activity and use and/or cellular telephone use . . . .

(3:66-4:6) The asserted apparatus claims[5] describe "[a] transaction security apparatus." For example, claim 30 provides:

> A transaction security apparatus, comprising:
>     a memory device, wherein the memory device stores a limitation or restriction regarding a banking transaction, wherein the banking transaction involves a withdrawal from a checking account or a cashing of a check on a checking account, wherein the limitation or restriction contains information for prohibiting a withdrawal from a checking account or for prohibiting a cashing of a check on a checking account, wherein the limitation or restriction is transmitted from a communication device associated with an individual account holder, and further wherein the limitation or restriction is transmitted to a receiver on or over at least one of the Internet and the World Wide Web, wherein the limitation or restriction is automatically received by the receiver, and further wherein the limitation or restriction is automatically stored in the memory device; and
>     a processing device, wherein the processing device processes information regarding a banking transaction, wherein the processing device utilizes the limitation or restriction automatically stored in the memory device in processing the banking transaction, and further wherein the processing device generates a signal containing information for allowing or disallowing the banking transaction.

(47:19-43)

Applying the analytical framework of *Alice*, the court first "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." In *Alice*, the

---

proceed with an invalidity defense. A § 101 analysis is a matter of law and the court will not strike defendant's arguments in this regard. Plaintiff's motion to strike is denied.

[5]The asserted independent claims are 30, 102, 317, 414 and the asserted dependent claims are 31, 34, 106, 122, 324, 343, 416, and 422.

11

Supreme Court found that the claims were drawn to the patent-ineligible abstract idea of "intermediated settlement," which was also a "fundamental economic practice." *Id.* at 2356. In *Bilski II*, the Supreme Court held that the claims involved were drawn to the patent-ineligible abstract idea of "hedging, or protecting against risk," which was a "fundamental economic practice." *Id.* at 611. In each of these cases, the claims described more than the central idea put forth by the Supreme Court. For example, in *Bilski II*, claim 1 described "a series of steps instructing how to hedge risk." *Bilski II*, 561 U.S. at 599.

In this regard, defendant offers the following hypothetical: "Mr. Ashley, a bank teller, is sorting the checks presented that day for payment. An account holder, Ms. Samuels, asks (or has asked) Mr. Ashley to stop payment on her check No. 235 for $75.00. Mr. Ashley locates check 235 for $75.00 and does not pay it." (D.I. 139 at 14) The claim by claim comparison for claim 30 is:[6]

| '003 Claim Language (all parentheticals are added to claim) | Performance Without a Computer |
|---|---|
| A transaction security apparatus, comprising: | |
| a memory device (computer memory), wherein the memory device stores | Mr. Ashley's memory or the bank's written list used for reference regarding holds or stop payment orders. |
| a limitation or restriction regarding a banking transaction, wherein the banking transaction involves a withdrawal from a checking account or a cashing of a check on a checking account, wherein the | Mr. Ashley has memorized, or recalls to review, the written list of accounts having a hold or stop payment order[] on checking accounts. |

---

[6]Defendant provides similar comparisons for independent claims 102, 317, and 414. (D.I. 139 at 16-21)

12

| | |
|---|---|
| limitation or restriction contains information for prohibiting a withdrawal from a checking account or for prohibiting a cashing of a check on a checking account, | |
| wherein the limitation or restriction is transmitted from a communication device (e.g., a personal computer) associated with an individual account holder, and further wherein the limitation or restriction is transmitted to a receiver (computer communications controller) on or over at least one of the Internet and the World Wide Web, | An account holder, Ms. Samuels, speaks to Mr. Ashley, or she gives him a note, or calls him, and asks that Mr. Ashley stop payment on Check No. 235 for $75.00 or that he put a hold order on her account. |
| wherein the limitation or restriction is automatically received by the receiver, and further wherein the limitation or restriction is automatically stored in the memory device; | Mr. Ashley hears Ms. Samuels request or he reads her note and he memorizes it or writes it onto the bank list of stop payment orders or account hold orders. |
| and a processing device, (computer CPU) wherein the processing device processes information regarding a banking transaction, | Mr. Ashley as he sorts that day's presented checks for cashing. |
| wherein the processing device utilizes the limitation or restriction automatically stored in the memory device in processing the banking transaction, and further | Mr. Ashley consults the list or remembers Ms. Samuels' stop payment order or hold order while sorting the presented checks for payment. |
| wherein the processing device generates a signal containing information for allowing or disallowing the banking transaction. | Mr. Ashley notices a check on Ms. Samuels' account that matches the stop payment order of Ms. Samuels and Mr. Ashley' decides he is not to pay the check. |

(D.I. 139 at 14-16)

Plaintiff objects to defendant's characterization of claim 30 as incomplete, arguing that it is not directed to all bank transactions, nor is it limited to checks. Plaintiff

13

also protests that the hypothetical ignores what may be the most important element of these claims – that the "limitation or restriction" comes from the "communications device associated with an individual account holder" – in other words, that the claim is performed by computers. But that is precisely what defendant seeks to demonstrate, that the abstract idea embodied by the claim is a conventional business practice utilized by bankers or financial institutions in their dealings with individual account holders without the use of computers. Consistent with the analyses in *Alice* and *DDR Holdings*, the claims at issue are directed to an abstract idea.

Turning to step two of the *Alice* framework, the court examines whether the claims are limited by an "inventive concept" such that "the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice Corp.*, 134 S.Ct. at 2355. To this end, plaintiff argues that the claims use "specific computers" with bank processing software, making them "special purpose computers." Defendant maintains that the claims use generic computer components. The bank processing software is described in the specification.

> The central processing computer 103 will then, at step 133, process the information and/or data pertinent to the transaction and to the particular account. The central processing computer 103 may utilize any of the **widely known data processing and/or software routines**, which are known to those skilled in that art, in order to process transaction requests and/or authorizations involving the use of the respective account(s) and/or related card(s).

(25:17-24)

Plaintiff admits that the applicant did not invent the computer components or the banking software. For example, claim 30 utilizes a memory to store a limitation or restriction, a communication device to transmit, a receiver to receive, and a processing

14

device to process information and generate a signal containing information. While plaintiff objects to the characterization of these components as generic, the addition of well known data processing software does not transform these components into a "special purpose computer." Plaintiff's expert, Cheng, stated that

> none of the asserted claims require only a conventional processing device and a memory device. Every asserted claim requires significantly more, including in some claims receivers, transmitters, communications devices (in some claims very specific communications devices), data entry devices, input devices, network computers, central transaction processing computers, the Internet and World Wide Web . . . .

(D.I. 144, ex. 22 at ¶ 49) This conclusory statement, however, does not provide any examples of any of the components performing functions other than traditional computing functions such as storing, processing, and transmitting. *Cf. In re Katz*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) (in analyzing means-plus-function claims, finding that "the functions of 'processing,' 'receiving,' and 'storing' are coextensive with the structure disclosed, i.e., a general purpose processor," such "functions can be achieved by any general purpose computer without special programming"). The computer components are being employed for basic functions, including storage, transmitting and receiving information, and, the court concludes that such components are not "specific" or "special purpose" computers.[7] While the computer components do allow the abstract idea to be performed more quickly, this does not impose a meaningful limit on the scope of the claim. *Bancorp*, 687 F.3d at 1278.

---

[7]Plaintiff advances the same argument, i.e., that the claims use "special purpose computers," to assert that the claims are "tied to a particular machine or apparatus," and satisfy the first prong of the machine-or-transformation test. Using the same analysis, the court disagrees.

As the Federal Circuit explained in *DDR Holdings*, in order to pass muster under § 101, it is no longer sufficient to use the Internet through generic computer components to achieve a useful result. The "inventive concept" required under the second step of the *Alice* test must now "specify how interactions with the Internet are manipulated to yield a desired result . . . ." *DDR Holdings*, 2014 WL 6845152 at *12. The claims in *DDR Holdings*, for example, stood apart "because they [did] not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution [was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at *10. The claims at issue fall squarely within the former category of patent ineligible claims.

The fact that the asserted claims are apparatus claims, not method claims, does not change the court's analysis. Indeed, if that were the case, then "applying a presumptively different approach to system [or apparatus] claims generally would reward precisely the type of clever claim drafting that the Supreme Court has repeatedly instructed [the Court] to ignore." *CLS Bank*, 717 F.3d at 1289; *Mayo*, 132 S.Ct. at 1297; *see also, Walker Digital*, 2014 WL 4365245 at *6 (finding both the system and method claims invalid, when "the system claims recited . . . merely take the abstract idea of [the method] claims . . . and list generic computer components (processor, memory) to implement the abstract idea."). Here, as in *Bancorp*, "without the computer limitations nothing remains in the claims but the abstract idea." *Bancorp*, 687 F.3d 1266 at 1279-80.

The preemption inquiry[8] also persuades the court that the claims at issue are not patent eligible. In this regard, plaintiff argues that the field is not preempted because a bank could communicate with its customers without using the Internet, i.e., via mail, telephone, or in person. Moreover, plaintiff explains that "the claimed limitations or restrictions [could] be entered by bank employees, rather than coming from an account holder's communications device." (D.I. 143 at 26) In other words, plaintiff argues that there is no preemption as the abstract idea can be performed without computers. However, this argument turns the analysis on its head. With the ubiquity of computers, arguing that a field is not preempted because a claim may be performed "by hand" is not persuasive. "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S.Ct. at 2358 (citations omitted). Allowing the asserted claims to survive would tie up any innovation related to performing banking transactions on computers which would, in turn, monopolize the "abstract idea." The above analysis applies to each of the independent claims.

Dependent claims 31 and 106 add a transmitter to send a second signal to a

---

[8]The preemption inquiry focuses on whether the patent "would risk disproportionately tying up the use of the underlying ideas." *Alice*, 134 S.Ct. at 2354; *Mayo*, 132 S.Ct. at 1294 (holding that "patents [that] would ... disproportionately t[ie] up the use of the underlying natural laws" are invalid for lacking patentable subject matter); *Enfish, LLC v. Microsoft Corp.*, Civ. No. 12–07360, 2014 WL 5661456, at *5 (C.D. Cal. Nov. 3, 2014) (the court "must then determine whether there is an inventive concept that appropriately limits the claim, such that the claim does not preempt a significant amount of inventive activity.").

communication device with information regarding the banking transaction. Claim 34 adds a transmitter which transmits an email message with information to a network computer and/or communication devices. Claim 324 requires an Internet transaction. Claims 343 and 416 require the communication device to be a wireless device. The above analysis addressed the "transmitter," "email messages," and the use of the Internet. These are each activities which are made possible by generic computers. The restriction to wireless devices does not purposefully limit the claims. Claim 122 describes a certain limitation or restriction type. This limitation does not restrict the claim, instead, it provides a list of common transaction limitations, i.e., limiting the dollar amount of a transaction or authorizing specific vendors. Claim 422 requires that the processing device evaluate a hold and prohibit a withdrawal for a checking account, a savings account, or an automated teller machine account. This claim language describes a specific use of the processing device, thereby describing a particular application of the "abstract idea" discussed above. None of the dependent limitations serve to limit the claims in such a way that the "abstract idea" is meaningfully limited. The court concludes that the asserted claims do not recite patent eligible subject matter and, therefore, are invalid under § 101.

## V. CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment of invalidity and denies plaintiff's motion for summary judgment of validity with

regard to patentable subject matter.[9,10]

---

[9]The court does not reach the parties' other arguments regarding validity. Nor does the court reach the parties' remaining motions to strike certain arguments and testimony regarding infringement.

[10]The claims are invalid and, therefore, not infringed. *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) ("invalid claim[s] cannot give rise to liability for infringement") (citation omitted). For this reason, the court grants defendant's motion for summary judgment of non-infringement and denies plaintiff's motion for summary judgment of infringement.