IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOAO BOCK TRANSACTION SYSTEMS, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civ. No. 12-1138-SLR |
| JACK HENRY & ASSOCIATES, INC. | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM ORDER**

At Wilmington this 31st day of March, 2016, having reviewed defendant's motions for attorney fees, and the papers filed in connection therewith;

IT IS ORDERED that defendant's motion for attorney fees (D.I. 245) is granted and motion for supplemental attorney fees (D.I. 270) is denied, for the reasons that follow:

1. **Background.** On September 14, 2012, Joao Bock Transaction Systems, LLC ("plaintiff") filed a complaint against defendant Jack Henry & Associates, Inc. ("defendant"), alleging that certain of defendant's products, "such as but not limited to its 'goDough' and 'NetTeller Online Banking'" products, infringe United States Patent No. 7,096,003 ("the '003 patent"). (D.I. 1) On December 3, 2012, defendant answered and counterclaimed for declaratory judgment of invalidity. (D.I. 6) On June 13, 2013, the court denied plaintiff's motion to dismiss the counterclaim and granted defendant's motion for leave to file an amended counterclaim, which was filed the same day. (D.I.

30; D.I. 32) On June 27, 2013, plaintiff answered the counterclaim. (D.I. 33) The court issued its claim construction order on June 30, 2014 and denied defendant's motion for summary judgment of invalidity based on collateral estoppel. (D.I. 124) On December 15, 2014, the court granted defendant's motion for summary judgment of invalidity and non-infringement,[1] and on December 18, 2014 entered judgment in favor of defendant. (D.I. 238, 239, 241) The Federal Circuit affirmed the court's decision on October 13, 2015 per curiam pursuant to Federal Circuit Rule 36 and the Supreme Court denied plaintiff's writ of certiorari on March 21, 2016. *Joao Bock Transaction Sys., LLC v. Jack Henry & Associates, Inc.*, 803 F.3d 667, 668 (Fed. Cir. 2015) cert. denied, No. 15-974, 2016 WL 375058 (U.S. Mar. 21, 2016). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. **Standard.** Section 285 provides, in its entirety, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). The court first determines whether the case is exceptional and, if so, whether an award of attorney fees is justified. *Id.* at 915-16 (citations omitted). The Supreme Court has defined "an 'exceptional' case [as] simply one that stands out from others with

---

[1] And denying plaintiff's motions for summary judgment of validity and infringement; denying plaintiff's motion to strike defendant's motion for summary judgment of invalidity; denying as moot plaintiff's motion to strike portions of defendant's motion for summary judgment of non-infringement and portions of defendant's opposition to plaintiff's motion for summary judgment of infringement; denying as moot defendant's motion to strike new infringement theories and product functionality; and denying as moot defendant's motion to strike portions of plaintiff's expert infringement report.

respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, — U.S. —, 134 S. Ct. 1749, 1756 (2014).

3. District courts should consider the "totality of the circumstances" and use their discretion to determine on a case-by-case basis whether a case is "exceptional." *Id*. "[A] 'nonexclusive' list of 'factors,' [to consider] includ[es] 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id*. at n.6. Cases which may merit an award of attorney fees include "the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees" or "a case presenting either subjective bad faith or exceptionally meritless claims." *Id*. at 1757. A party seeking attorney fees under § 285 must prove the merits of their contentions by a preponderance of the evidence. *Id*. at 1758.

4. **Analysis**. The posture of this case stands out from other cases. At the outset, plaintiff filed a motion to dismiss defendant's counterclaims and strike certain affirmative defenses and background information pursuant to Federal Rule of Civil Procedure 12b(6) and 12(f), respectively. The court denied the motion to dismiss explaining that defendant's answer included numerous details supporting its belief in the invalidity of the '303 patent. The court also denied the motion to strike finding that the objected to introductory material was related to defendant's equitable defenses in a

substantive way; fraud on the PTO was a proper potential defense; and, defendant's affirmative defenses contained supporting facts. (D.I. 30) Defendant was allowed to amend its counterclaims restating certain facts within its counterclaim allegations. (D.I. 32)

    5. In the complaint, plaintiff alleged infringement by defendant's products, "such as but not limited to its 'goDough' and 'NetTeller Online Banking.'" (D.I. 1) Plaintiff's initial notice of accused products (March 11, 2013) contained more than 80 products that allegedly infringed 67 claims. Plaintiff's initial claim charts (May 10, 2013) accused 65 products of infringing 36 claims. On May 14, 2013, defendant requested that plaintiff narrow its infringement claims to facilitate discovery. Plaintiff did not do so, arguing as late as September 2013 that it would be premature to reduce the number of accused products or asserted claims. On January 6, 2014, the court ordered plaintiff to submit a proposal to reduce the number of accused products to 6-8 and to rank the number of claims in order of importance. Plaintiff requested to have seven products[2] be deemed "representative" of the other 47 other products.[3] Plaintiff then changed the identity of the seven "representative" products at least four times by July 2014, when it served its final infringement contentions. In those final infringement contentions, plaintiff included six claims that had not been asserted before, which claims were removed after a telephone conference with the court.[4] Defendant argues that Joao (cited in the initial

---

[2] NetTeller Online Banking, NetTeller Cash Management, iPay Andiamo, Point Mobility, SMS Guardian, iPay Online Bill Pay, and Alogent Mobile Remote Deposit. Plaintiff did not serve infringement contentions or charts for several of these products.
[3] This still conferred a burden on defendant to verify the "representativeness" of the lead products.
[4] With infringement charts still missing for certain of the representative products.

4

disclosures, along with Bock, as having discoverable information) did not analyze the various accused defendant's products relevant to the shifting infringement positions taken throughout the litigation.[5] Moreover, Cheng, plaintiff's expert, began work in May 2014, and only reviewed the seven products in the final infringement contentions.[6] Defendant concludes that plaintiff "failed to perform an adequate good faith infringement analysis throughout this case." (D.I. 246)

6. Plaintiff responds that the large number of infringing products was simply due to the number of defendant's products and that, in order to address "the parties' concerns about the large number of infringing products, [plaintiff] proposed the identification of 'representative products.'"[7] According to plaintiff, defendant's conduct throughout the litigation was not without fault. As to the analysis of the infringing products, plaintiff states that it "had to review as many as 70,000 documents and over 1 million pages in order to identify how the accused products worked."[8] Therefore, plaintiff contends that it was continually assessing the soundness of the pending

---

[5] Joao did "not recall" whether he had determined which claims to assert against defendant and cited attorney-client privilege, in refusing to answer any questions as to whether he had reviewed any of defendant's products to determine which, if any, might infringe. (D.I. 249 at 16:10-17, 18:25-19:23)

[6] Defendant also points out that plaintiff sued defendant on U.S. Patent No. 6,529,725 ("the '725 patent"), which was found to be invalid by the Federal Circuit, *Joao Bock Transaction Systems, LLC v. Sleepy Hollow Bank*, 445 Fed. Appx. 359 (Fed. Cir. 2011). In August 2009, plaintiff sued seven of defendant's banks in the Eastern District of Texas alleging infringement of the '003 patent, but dropped the action without prejudice. (D.I. 246 at 4-5)

[7] Stating that the "representative products approach that [plaintiff] proposed is indicative of its innovative approach to this litigation designed to limit exactly the discovery burden [defendant] complains of in its motion."

[8] Defendant points out that on October 15, 2013, plaintiff asked defendant to add more than a dozen different search terms and change the search methodology.

infringement claims. (D.I. 261) Finally, plaintiff complains that defendant "only" succeeded in invalidating the patent based on 35 U.S.C. § 101, an evolving area of the law at the time.[9]

7. During the claim construction exercise, the court noted that the patentee (plaintiff) had turned the principles of claim construction on their head, by providing definitions for certain claim language during the claim amendment process that took place in the PTO from October 2004 to September 2005. Such definitions were not included in the specification, were not the subject of any commentary by the examiner, were made years after the earliest priority date, and were added for litigation purposes, that is, to differentiate the '003 patent from the '725 patent. As a result of the court's claim construction, the claims of the '003 patent were more narrow than those of the '725 patent, and defendant's motion for summary judgment of invalidity based on collateral estoppel was denied. (D.I. 124)

8. Plaintiff cannot complain that defendant's resistance to the idea of representative products is the reason for the discovery burden, when plaintiff refused to narrow the scope of its infringement allegations for over a year and significant discovery was performed before plaintiff suggested this approach. Moreover, for the same reasons, plaintiff's burden of reviewing the discovery on the allegedly infringing products was one of its own making. Plaintiff's claim construction positions (addressed above) and its lack of a coherent infringement theory (evidenced by its shifting infringement positions) contributed greatly to the discovery burden. Indeed, seven defendant

---

[9] *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S.Ct. 2347 (2014), decided on June 19, 2014.


witnesses were deposed on products that were either dropped or moved to the "represented" group.[10] While each individual action by plaintiff may not have been "exceptionally" unreasonable, the totality of the circumstances of the present action are indicative of the type of "exceptional case" that justifies an award of fees. That defendant's motion for invalidity was granted on the § 101 issue does not negate the "exceptional" nature of the case, when the record indicates that plaintiff pursued litigation so inefficiently as to be objectively unreasonable and burdensome for defendant and the court.

9. **Attorney fees.** The court "has discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Courts in the Third Circuit are directed to calculate attorney fees pursuant to the "lodestar" approach. *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). The lodestar amount results from multiplying the amount of time reasonably expended by reasonable hourly rates. *Id.* The court may exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation. *Hensley*, 461 U.S. at 433. The prevailing community market rates assist the court in determining a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing party bears the burden of establishing the reasonableness of both the time expended and the hourly rates. *Hensley*, 461 U.S. at 434; *Blum*, 465 U.S. at 895 n.11. The party opposing the fee award may challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *See Bell v. United Princeton Properties, Inc.*,

---

[10] Witnesses on Teleweb, EPS, AudioTel, Telebank, PassPort, and Alogent products.

884 F.2d 713, 715 (3d Cir. 1989). Based on the opposing party's evidence, the court may further adjust the fee. A court may not sua sponte reduce a request for attorney fees. *Bell*, 884 F.2d at 719. However, "the district court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party." *Id.* at 721. The party who asks for the fees to be adjusted has the burden of proving an adjustment is necessary. *Blum*, 465 U.S. at 898.

10. At the outset, the court rejects plaintiff's contention that defendant may only be compensated for its expenses related to the § 101 issue. As plaintiff has conceded, that area of law was at the time (and even today) evolving. Judicial economy (not defendant) is responsible for the court's decision not to reach additional issues once defendant succeeded on this issue at the summary judgment phase.[11] Indeed, had the court been reversed on its decision regarding the § 101 issue,[12] the parties' work up to that point would not have been in vain. Defendant has provided a declaration and exhibits outlining the core team responsible for the litigation, along with the time and expenses billed. (D.I. 247) The hourly rates cited by defendant are from $215 to $450 per hour for the attorney rates and from $110 to $175 for the paralegal, clerk and

---

[11] Having found the asserted claims invalid, the court granted defendant's motion for summary judgment of non-infringement and denied plaintiff's motion for summary judgment of infringement. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) ("invalid claim[s] cannot give rise to liability for infringement") (citation omitted). Moreover, the court did not reach the parties' other arguments regarding validity or the parties' remaining motions to strike certain arguments and testimony regarding infringement

[12] Which plaintiff appealed to both the Federal Circuit and the Supreme Court.

8

litigation support personnel. Defendant seeks attorney fees in the amount of $2,304,986.68.[13]

11. While plaintiff complains that defendant provides no basis for determining whether the hourly rates are reasonable, the court "is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to [it] by particular attorneys." Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 169 (3d Cir. 1973). As a general matter, defendant's counsel are experienced attorneys and defendant's stated hourly rates are not unreasonable. Taking into account that patent cases are complex and patent litigation is an expensive proposition, nevertheless, the court will award attorney fees of $1,000,000[14] to account for the fact that plaintiff's ever changing litigation strategies (including its claim construction positions) created a tortuous path to resolution.

_____
United States District Judge

---

[13] And additional expenses for a total of $2,865,501.60. (D.I. 245)
[14] Approximately half of the requested amount. The court declines to award defendant its additional expenses (D.I. 247) and costs (disputed by plaintiff) of 7,987.80 (D.I. 269, 276) Moreover, the court denies defendant's motion for additional fees, as such appeal, was reasonable and not exceptional.